## UNITED STATES *v.* MURRAY.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

## COOK *v.* UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

Nos. 394, 539. · Argued November 22, 23; 1927.—Decided January 3, 1928.

When a person sentenced to imprisonment by a District Court has begun to serve his sentence, that court has no power under the Probation Act of March 4, 1925, to grant him probat..on even though the term at which sentence was imposed had not expired.   P. 352. ·

19 F. (2d) 826, affirmed.

The first of these cases came here by a certificate from the Circuit Court of Appeals for the Eighth Circuit, propounding a question arising upon review of an order of the District Court placing a convict on probation after he had begun service of his sentence.   The entire record was ordered up.

The second case came up by writ of certiorari (*post,* p. 516) to a judgment of the Circuit Court of Appeals for the Fifth Circuit which reversed a similar order of probation.

*Assistant Attorney General Willebrandt,* with whom *Solicitor General Mitchell* and *Louise Foster,* Attorney in the Department of Justice, were on the brief, for the United States.

The Murray case is not moot if the defendant may be recommitted to jail to serve the remainder of the sentence, because the order for probation was void. ·

The limitation on the power of a federal court to alter a sentence after execution has commenced, has not been

changed by the Probation Act. *Stewart* v. *United States*, 300 Fed. 769; *United States* v. *Howe*, 280 Fed. 815; *Ex parte Lange*, 18 Wall. 163; *Miller* v. *Snook*, 15 F. (2d) 68; *Archer* v. *Snook*, 10 F. (2d) 567.

Neither the language of the Act when considered as a whole, nor the declared purpose of Congress in passing it, is consistent with the granting of probation after commitment. *Mouse* v. *United States*, 14 F. (2d) 202; *Archer* v. *Snook*, 10 F. (2d) 567; House Report No. 1377, 68th Congress, 2d Sess., p. 2.

The decisions support the contention of the United States. *Nix* v. *James*, 7 F. (2d) 590; *Kriebel* v. *United States*, 10 F. (2d) 762; *Evans* v. *District Judge*, 12 F. (2d) 64; *Ackerson* v. *United States*, 15 F. (2d) 268; *United States* v. *Chafina*, 14 F. (2d) 622; *Davis* v. *United States*, 15 F. (2d) 697; *Archer* v. *Snook*, 10 F. (2d) 567; *Mouse* v. *United States*, 14 F. (2d) 202; *United States* v. *Young*, 17 F. (2d) 129; *United States* v. *Davis*, 19 F. (2d) 536; *People ex rel. Paris* v. *Hunt*, 201 App. Div. (N. Y.) 573, affirmed, 234 N. Y. 558; *State* v. *Ensign*, 38 Idaho, 539; *State ex rel. Reid* v. *District Court*, 68 Mont. 309; *State ex rel. Bottomly* v. *District Court*, 73 Mont. 541; *State ex rel. Zabel* v. *Municipal Court*, 179 Wis. 195.

The expiration of the term at which sentence was imposed or mandate of appellate court received may not deprive the district court of power to grant probation, provided the convict has not been committed. *Nix* v. *James*, 7 F. (2d) 590; *Kriebel* v. *United States*, 10 F. (2d) 762; *Evans* v. *District Judge*, 12 F. (2d) 64; *Ackerson* v. *United States*, 15 F. (2d) 268.

No appearance for Murray.

*Mr. Herbert C. Wade*, with whom *Mr. Sam J. Callaway* was on the brief, for petitioner Cook.

The provisions of the Probation Act are plain and unambiguous and empower the courts of original jurisdiction

to place upon probation a person convicted at a term of
court which has expired and who is serving his sentence
in the penitentiary, the only condition being that it shall
appear to the satisfaction of the court that the ends of
justice and the best interests of the public, as well as the
defendant, will be subserved thereby. The statute pro-
vides that this may be done "after conviction or after a
plea of guilty or nolo contendere for any crime or offense
not punishable by death or life imprisonment." It con-
tains no limitation as to the time after conviction, plea
of guilty, or nolo contendere, within which the power
must be exercised. The statute is obviously remedial,
and should, if necessary, be given a fairly liberal con-
struction.

The expression "to suspend the execution" fits a per-
son already serving a sentence just as well as one who has
not commenced the service of a sentence pronounced.

If the statute applies after the term of court has ex-
pired, there is no logical reason why it should not apply
even though the applicant is serving his sentence.

Decisions of other courts regarding probation: *Nix* v.
*James,* 7 F. (2d) 590; *Lovejoy* v. *Isbell,* 70 Conn. 557;
*Sommers* v. *Johnson,* 4 Vt. 278; *United States* v. *Nix,* 8 F.
(2d) 759; *Kriebel* v. *United States,* 10 F. (2d) 762;
*Evans* v. *District Judge,* 12 F. (2d) 64; *Ackerson* v.
*United States,* 15 F. (2d) 268; *State ex rel. Zabel* v.
*Municipal Court,* 179 Wis. 195; *United States* v. *Chafina,*
14 F. (2d) 622; *United States* v. *Davis,* 19 F. (2d) 536;
*Miller* v. *Snook,* 15 F. (2d) 68; *United States* v. *Young,*
17 F. (2d) 129; *Archer* v. *Snook,* 10 F. (2d) 567; *Davis*
v. *United States,* 15 F. (2d) 697; *Mouse* v. *United States,*
14 F. (2d) 202; *State* v. *Teal,* 108 S. C. 455; *Antonio* v.
*Milliken,* 9 Ohio App. 356; *State* v. *Ensign,* 38 Idaho 539;
*State ex rel. Reid* v. *District Court,* 68 Mont. 309; *State
ex rel. Bottomly* v. *District Court,* 73 Mont. 541.

Where the terms of the statute are unambiguous and do not involve an absurdity, it is the duty of the Court to give effect to the language as written regardless of after-thoughts as to what should have been provided. *Caminetti* v. *United States,* 242 U. S. 470; *Hamilton* v. *Rathbone,* 175 U. S. 414.

At least two state statutes in existence when the federal Act was passed have been held to apply to persons serving their sentences. *Antonio* v. *Milliken,* 9 Ohio App. 356; *State* v. *Teal,* 108 S. C. 455. It does not appear from its proceedings or otherwise that Congress was attempting to pattern after any particular state enactment.

If Congress did not intend the Act to apply to persons already serving their sentences of imprisonment, why did it not insert a provision expressly so stating, like the one contained in the New York law?

As to the constitutionality of the Probation Act, see *Ex parte United States,* 242 U. S. 27; *Nix* v. *James,* 7 F. (2d) 590; *Anderson* v. *Carroll,* 263 U. S. 192; *O'Brien* v. *McClaughry,* 209 Fed. 819; *Thompson* v. *Duehay* (D. C.), 217 Fed. 484, affirmed, 223 Fed. 305.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

These cases involve the construction of the Act of March 4, 1925, c. 521, 43 Stat. 1259, which provides a probation system for United States Courts.

No. 394 came here by certificate from the Circuit Court of Appeals for the Eighth Circuit and we ordered up the entire record. Section 239 of the Judicial Code, Act of February 13, 1925, c. 229, 43 Stat. 936, 938.

On October 22, 1926, in the District Court of the United States for the District of Nebraska, the defendant, Glen Murray, pleaded guilty to certain violations of the National Prohibition Act. On October 25, 1926, he was sentenced to three months' imprisonment at the Douglas

County jail, at Omaha. On the same day hϵ was delivered by the United States Marshal, in pursuance of the sentence, to the jail keeper, and commenced serving it. On October 26th, the next day, and during the same term of court, the district court entered an order placing him on probation, which read as follows:

"Ordered and adjudged that said defendant, Glen Murray, be placed on probation for the period of two (2) years, under the personal supervision of Robert P. Samardick, who is hereby appointed and constituted probation officer in this case."

The United States took the case to the Circuit Court of Appeals by writ of error. The question certified to this Court by that court was as follows:

"Did the United States District Court for the District of Nebraska have authority under the Act of March 4, 1925, 43 Stat., chap. 521, p. 1259, to make during the term at which sentence was imposed the order placing the defendant in error upon probation after he had commenced to serve sentence?"

On November 21, 1923, Frederick A. Cook was indicted in the District Court of the United States for the Northern District of Texas. He was convicted on twelve counts charging him with using the United States mails in executing a scheme to defraud within section 215 of the United States Criminal Code, and was sentenced by a district judge designated from another district and circuit to a total of fourteen years and nine months and to pay a total fine of $12,000. He was thereafter confined in the county jail of Tarrant County, Texas, where he remained until after his case had been appealed to the Fifth Circuit Court of Appeals, which affirmed the sentence in February, 1925. In April, 1925, he was transported to the United States penitentiary at Leavenworth, Kansas, to serve his sentence, where he has been confined ever since. In February, 1927, he applied to the regular judge of the district

where he had been sentenced to enter an order placing him on probation for a period of five years in the care of a special probation officer under the Probation Act. The application was granted on March 17, 1927. The warden of the penitentiary was directed to release Cook from custody, and one W. Erskine Williams was appointed probation officer to whom Cook should report every six months. The record contains an elaborate opinion of the district judge upholding his power to make the order.

Objecting to the order, the United States sued out a writ of error to the district court from the Circuit Court of Appeals. That court held that the Probation Act did not empower the district court to grant probation to Cook; that the power conferred in the act was not exercisable in a case which had passed beyond the court's control by the rendition of a final judgment and the expiration of the term during which such judgment was rendered. 19 Fed. (2d) 826. We brought the case here by a writ of certiorari, *post,* p. 516.

The first question which we must consider, and which if we decide in favor of the Government controls both cases and disposes of them, is whether there is any power in the federal courts of first instance to grant probation under the Probation Act, after the defendant has served any part of his sentence. The Probation Act, 43 Stat. 1259, c. 521, provides in its first and second sections as follows:

"That the courts of the United States having original jurisdiction of criminal actions, except in the District of Columbia, when it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public, as well as the defendant, will be subserved thereby, shall have power, after conviction or after a plea of guilty or nolo contendere for any crime or offense not punishable by death or life imprisonment, to suspend the imposition or execution of sentence and to place the defendant upon

probation for such period and upon such terms and conditions as they may deem best; or the court may impose a fine and may also place the defendant upon probation in the manner aforesaid. The court may revoke or modify any condition of probation, or may change the period of probation: *Provided,* That the period of probation, together with any extension thereof, shall not exceed five years.

"While on probation the defendant may be required to pay in one or several sums a fine imposed at the time of being placed on probation and may also be required to make restitution or reparation to the aggrieved party or parties for actual damages or loss caused by the offense for which conviction was had, and may also be required to provide for the support of any person or persons for whose support he is legally responsible.

"Sec. 2. That when directed by the court, the probation officer shall report to the court, with a statement of the conduct of the probationer while on probation. The court may thereupon discharge the probationer from further supervision and may terminate the proceedings against him, or may extend the probation, as shall seem advisable.

"At any time within the probation period the probation officer may arrest the probationer without a warrant, or the court may issue a warrant for his arrest. Thereupon such probationer shall forthwith be taken before the court. At any time after the probation period, but within the maximum period for which the defendant might originally have been sentenced, the court may issue a warrant and cause the defendant to be arrested and brought before the court. Thereupon the court may revoke the probation or the suspension of sentence, and may impose any sentence which might originally have been imposed."

Its subsequent sections provide for the appointment of one or more suitable persons to serve as probation officers

and for their compensation and expenses, make it the duty of the probation officer to furnish to the person released a written statement of the conditions of probation, to keep informed concerning the conduct and condition of each person on probation, and report it to the court, to aid the persons on probation and to bring about improvements in their conduct and condition; to keep records of his work, accounts of the moneys collected from persons under his supervision, and give receipts therefor and make monthly returns thereof and to have the same power of arrest as is now exercised by a deputy marshal. The fifth section makes the act to take effect immediately.

The report of the Committee on the Judiciary of the House of Representatives recommending the bill which became the act, (Report No. 1377, 68th Congress, 2d Session), stated its purpose and continued:

" Prior to the so-called Killitts case, rendered in December, 1916, the district courts exercised a form of probation either by suspending sentence or by placing the defendants under State probation officers or volunteers.' In this case, however (*Ex parte United States,* 242 U. S. 27), the Supreme Court denied the right of the district courts to suspend sentence. In the same opinion the court pointed out the necessity for action by Congress if the courts were to exercise probation powers in the future. The language of the court is as follows:

" ' So far as the future is concerned . . . recourse must be had to Congress, whose legislative power on the subject is, in the very nature of things, adequately complete '.

" Since this decision was rendered, two attempts have been made to enact probation legislation. In 1917, a bill was favorably reported by the Judiciary Committee and passed the House. In 1920, the Judiciary Committee again favorably reported a probation bill to the House, but it was never reached for definite action.

." If this bill is enacted into law, it will bring the policy of 'the Federal Government with reference to its treatment of those convicted of violations of its criminal laws in harmony with that of the States of the Union. At the present time every State has a probation law, and in all but 12 states the law applies both to adult and juvenile offenders."

The report contains a memorandum in support of the bill, of which the following are passages:

" Probation is the method by which the court disciplines and gives an opportunity to reform to certain offenders without the hardship, the expense, and the risk of subjecting them to imprisonment. . . .

" It frequently happens that the same or a similar offense is committed by a hardened repeater who is deserving of no mercy at the hands of the court, and by a young boy, a first offender who has been led into crime by evil associates or bad environment, who after his detention and trial is thoroughly repentant and capable of becoming an upright citizen if extended a helping hand upon his release. . . .

" The parole laws and pardoning power of the President are not adequate to meet the need for a probation system. Under the parole law the defendant must be committed and serve at least one-third of the sentence in full. This usually means six months' sentence and always means the branding of the delinquent as a convict and taking him away from his environment and associates in disgrace. The result of long experience with the probation system shows that it is far easier to reclaim an unhardened early offender without commitment to a prison than after it. The presidential power of pardon is subject to the same criticism and can naturally only be exercised in special cases."

By the Act of June 21, 1902, c. 1140, 32 Stat., 397, sec. 1, every person convicted of an offense against the United

States and confined in the penitentiary or jail for a definite term, having faithfully observed all the rules, becomes entitled to a deduction of five days for each month of the first year of his imprisonment, and for the period between one year and three, of six days, and increasing allowances therefor until it reaches ten days for each month in a sentence of ten years or more.

The Probation Act gives power to grant probation to a convict after his conviction or after a plea of guilty, by suspending the imposition or suspending execution of the sentence. This probation is to be after conviction or plea of guilty. The question is—Before what time must it be granted? Two answers to this latter question are possible. It must either be grantable at any time during his whole sentence or be limited to a time before execution of the sentence begins. If the first answer is adopted, it would confer very comprehensive power on the district judges in the exercise of what is very like that of executive clemency in all cases of crime or misdemeanor. It would cover in most cases the period between the imposition of the sentence and the full execution of it. It would cover a period in which not only clemency by the President under the Constitution might be exercised but also the power of parole by a Board of Parole abating judicial punishment to the extent of two-thirds of it as to all crimes punishable by imprisonment for more than one year. It seems quite unlikely that Congress would have deemed it wise or necessary thus to make applicable to the same crimes at the same time three different methods of mitigation.

Nor can we suppose that Congress would wish to grant such extended power in all but life and capital cases to the district judges and thus subject each to the applications of convicts during the entire time until the full ending of the sentences. This would seem unnecessary for

the hard worked district judges with their crowded dockets. A more reasonable construction is to reconcile the provisions for probation, parole and executive clemency, making them as little of a repetition as we can. Executive clemency must of course cover every form of relief from punishment. The parole statute provides a board to be invested with full opportunity to watch the conduct of penitentiary convicts during their incarceration and to shorten it not only by the regular monthly reduction of days but by a larger diminution by parole.

What was lacking in these provisions was an amelioration of the sentence by delaying actual execution or providing a suspension so that the stigma might be withheld and an opportunity for reform and repentance be granted before actual imprisonment should stain the life of the convict. This amelioration had been largely furnished by a power which trial courts, many of them, had exercised to suspend sentences. In some sections of the country it had been practiced for three-quarters of a century. By the decision in *Ex parte United States,* 242 U. S. 27, that remedy was denied. In that case, however, this court suggested legislation to permit probation. For eight years thereafter Congress was petitioned to enact it, and finally the Probation Act was passed.

The great desideratum was the giving to young and new violators of law a chance to reform and to escape the contaminating influence of association with hardened or veteran criminals in the beginning of the imprisonment. Experience had shown that there was a real *locus poenitentiae* between the conviction and certainty of punishment, on the one hand, and the actual imprisonment and public disgrace of incarceration and evil association, on the other. If the case was a proper one, great good could be done in stopping punishment by putting the new criminal on probation. The avoidance of imprisonment at

time of sentence was therefore the period to which the advocates of a Probation Act always directed their urgency. Probation was not sought to shorten the term. Probation is the attempted saving of a man who has taken one wrong step and whom the judge thinks to be a brand who can be plucked from the burning at the time of the imposition of the sentence. The beginning of the service of the sentence in a criminal case ends the power of the court even in the same term to change it. *Ex parte Lange,* 18 Wall. 163. Such a limit for probation is a natural one to achieve its end.

The words of the first section important upon this issue are: "shall have power, after conviction or after a plea of guilty or nolo contendere, . . . to suspend the imposition or execution of sentence and to place the defendant upon probation." The words mean to suspend the imposition of sentence or to suspend the execution of sentence, and that the placing of defendant upon probation is to follow the suspension of the imposition or the suspension of the execution of sentence, without an interval of any part of the execution. That is a reasonable construction and serves the well understood purpose of the statute. The suspension of execution was the point in time to which the provision for probation was directed. We do not say that the language is not broad enough to permit a possibly wider construction, but we think this not in accord with the intention of Congress.

This Act has been before courts of first instance and circuit courts of appeals a number of times, but we have found only one reported case, in addition to the decisions by the district courts in the instant cases, in which it has been held that probation may be granted after the service of the sentence has begun. That case is *United States* v. *Chafina,* 14 Fed. (2d) 622, a district court case. The other cases brought to our attention are not inconsistent with our ruling. *Nix* v. *James, District Judge,* 7 Fed.

(2d) 590; *Kriebel* v. *United States,* 10 Fed. (2d) 762; *Evans* v. *District Judge for the Western District of Tennessee,* 12 Fed. (2d) 64; *Ackerson* v. *United States,* 15 Fed. (2d) 268; *Davis* v. *United States,* 15 Fed. (2d) 697; *United States* v. *Young,* 17 Fed. (2d) 129; *United States* v. *Davis,* 19 Fed. (2d) 536.

With this interpretation of the statute it must be decided that the district court neither in the *Glen Murray* case nor in the *Cook* case had power to grant probation. It is true that there was but one day of execution of the sentence in the *Murray* case, but the power passed immediately after imprisonment began and there had been one day of it served. The cause is remanded to the district court with instructions to reverse the order placing Murray upon probation and for further proceedings. In the *Cook* case the action of the Circuit Court of Appeals reversing the order of the district court of the United States for the Northern District of Texas granting to Cook probation is affirmed.

*No. 394, reversed,*
*No. 539, affirmed.*