**UNITED STATES v. GARGANO et al.**

District Court, E. D. Louisiana. April 23, 1928.

No. 9782.

**1. Criminal law ⚖⇒1001—Trial court has authority to suspend sentence up to date of actual commitment after affirmance by Circuit Court of Appeals (National Probation Act 1925 [18 USCA §§ 724–727]).**

Trial court has authority, under National Probation Act March 4, 1925 (18 USCA §§ 724–727), to suspend execution of sentence up to the date of actual commitment after mandate of Circuit Court of Appeals affirming conviction, though after expiration of term at which conviction was had in trial court.

**2. Criminal law ⚖⇒1001—Evidence held to warrant suspension of sentence as to some of defendants, convicted of bribing prohibition officer, and denial of probation to another (Pen. Code, § 39 [18 USCA § 91]).**

Evidence on application for suspension of sentence, after conviction under Penal Code, § 39 (18 USCA § 91), by giving a bribe to a federal prohibition officer, held, such as to require a denial of application as to one defendant, and to authorize suspension of sentence as to others.

Jerome Gargano and others were convicted for giving a bribe to a federal prohibition officer. On application for suspension of execution of sentence. Denied as to one defendant, and allowed as to others.

Wayne G. Borah, U. S. Atty., of New Orleans, La.

Hugh S. Suthon, John McCloskey, and Hugh M. Wilkinson, all of New Orleans, La., for defendants.

BURNS, District Judge. Petitioners were convicted April 20, 1926, of a violation of section 39 of the Penal Code (18 USCA § 91) by giving a bribe to a federal prohibition officer, and were each sentenced to pay a fine of $1,500 and to serve a term of two years in the United States penitentiary at Atlanta, Ga.

Execution of this judgment was suspended by supersedeas, and the defendants were released on bail pending a decision by the Circuit Court of Appeals on writs of error. On March 3, 1928, the Circuit Court of Appeals affirmed the judgment of conviction as follows: "It is now here ordered and adjudged by this court that the judgment of the District Court in this cause, be and the same is hereby affirmed"—its mandate reading: "That such execution and further proceedings be had in said cause as according to right and justice and the laws of the United States ought to be had, the said writ of error notwithstanding."

On April 2, 1928, the defendants having been denied a rehearing in the Circuit Court of Appeals, and anticipating its mandate, the recordation of which and execution of judgment would follow, filed this application for the benefit of the Probation Act (18 USCA §§ 724–727), offering to submit proof of their several declarations of eligibility thereto. A rule to show cause why the relief prayed for should not be considered and granted was served on the plaintiff United States, through the United States attorney, in the manner and form usual in such cases.

By return to this rule the United States attorney contests the application, both on its merits and upon the ground that the court "is without jurisdiction to hear and pass upon this application, because the court does not have the right to exercise the power of release upon probation after the rendition of a final judgment and the expiration of the trial term in which the judgment of conviction was rendered."

The question thus presented upon this point has been considered settled since the Circuit Court of Appeals (Fifth Circuit) decided the case entitled United States v. Cook, 19 F.(2d) 826, holding that the District Court is not authorized to grant probation, both after the expiration of the term of court in which its final judgment is rendered and after the defendant is confined in prison in execution of that judgment.

The Cook Case (cited supra), along with a case entitled United States v. Glen Murray, 48 S. Ct. 146, 72 L. Ed. ——, was finally decided by the Supreme Court January 3, 1928, Nos. 394 and 539, October term, 1927, the decision of which rested entirely upon the conclusion that the granting of probation by the trial judge was limited to a time before execution of the sentence. The Supreme Court found it unnecessary to consider whether or not the power conferred by the act was exercisable after the term during which its final judgment, imposing the sentence, was rendered.

Petitioners strenuously contend that, since the first limitation in respect of the execution of judgment has been recognized by the Supreme Court, the second limitation in respect to the finality of the judgment in term time was not recognized and indorsed. The argument proceeds on the theory that the sentence or judgment is a separate and distinct judicial act from that of granting parole in administering this special statute, which the Supreme Court recognized as one imposing an additional burdensome duty on

the District Judges. In support of this contention, they cite the Supreme Court's declaration in the Murray-Cook Case that a number of cases brought to its attention were not inconsistent with its ruling therein. An examination of these cases shows that in the Kriebel Case, 10 F.(2d) 762 (7 C. C. A.), it was specifically held that the trial court has jurisdiction or power to hear a petition for probation, after affirmance of conviction by a Circuit Court of Appeals, a denial by the Supreme Court of a petition for certiorari, and the going down of a mandate, and after the term at which sentence was imposed. To the like effect is Ackerson v. United States, 15 F.(2d) 268, 2 C. C. A.; Nix v. James, 7 F.(2d) 590, 9 C. C. A.; Evans v. Judge, 12 F.(2d) 64, 6 C. C. A.

A consideration of these decisions, declared to be consistent by the Supreme Court with its ruling in the case above referred to, convinces me that the contention on behalf of the petitioners should be sustained; otherwise, the intent of Congress to change, by this remedial statute, the old law as it was defined in Ex parte United States, 242 U. S. 27, 37 S. Ct. 72, 61 L. Ed. 129, L. R. A. 1917E, 1178, Ann. Cas. 1917B, 355, that whilst the sentence of a court is its judgment which becomes final and passes beyond its control upon the expiration of the term, so that it may not be then set aside, altered, or amended, unless the proceeding for that purpose was begun during the term (U. S. v. Mayer, 235 U. S. 55, 35 S. Ct. 16, 59 L. Ed. 129; Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872), there are excellent reasons why a defendant should be permitted to apply for the benefits of the remedial statute after the judgment, which in fact became final only by the judgment of the appellate court affirming it. This point was precisely considered in the Kriebel Case, supra, where definitions of the statutory terms "suspend" and "impose" were reviewed. That court distinguished between the imposition of a sentence or judgment and the execution of that sentence, and concluded that a defendant, who takes a writ of error to the Circuit Court of Appeals and prosecutes thereafter a petition for certiorari to the Supreme Court, cannot thereafter be held foreclosed of his right, before execution, to petition for a suspension of the execution of that sentence.

In the Ackerson Case the Circuit Court of Appeals for the Second Circuit considered the substance of these several decisions and concluded that it was reasonably clear that Congress did intend to permit persons convicted of crime to apply for the benefit of the statute at any time before actually entering upon the performance of the sentence or judgment of the trial court, and that it did not intend to limit the dispensation of statutory relief to the term at which sentence was pronounced, nor by the views of the appellate court as to the propriety of that sentence, and that the action taken under the statute is distinct and separate from the judgment or sentence, which is not altered or modified.

Certainly the Supreme Court, in finding the substance of the opinions of the four Circuit Courts of Appeals consistent with their own, and in expressly indorsing the general conclusion of those courts by determining the limitation on the trial court's power in the case before it, by the single test so established, declared a rule of decision which must now be followed.

Among the further cogent reasons for the single test—i. e., that the court's authority to grant probation continues until the execution of sentence begins—is that in all cases, or nearly all cases, where an appeal is taken after conviction and sentence, the defendant would be deprived of the benefit of the statute. This alone should give pause to a decision measuring the limitation of the trial court's authority, since it would result in manifest injustice, by penalizing the defendant for prosecuting his defense and pursuing his legal remedies to a final conclusion in the appellate courts, the hearings and decisions in which are necessarily delayed long beyond the term of the trial court in which he was convicted.

In several of the opinions there seems an inclination to the view that the action of the trial court in suspending the execution of a sentence or judgment is part of the sentence and not separable. The contrary view seems more nearly correct. The sentence is imposed according to the penal statute under which the conviction is had, and is a judicial function flowing directly from the statute under which the criminal proceeding is brought; whereas the duties imposed by the Probation Act are of rather an auxiliary or ancillary character, sui generis in nature. These constitute a judicial function only by virtue of the legislative authority which Congress vested separately in the court, and which might well have been vested in some executive officer, board, bureau, or commission. So, too, some of these decisions incline to the view that probation should be granted or withheld immediately, or at the time sentence is imposed; whereas, frequently, and particularly in cases where the defendant pleads guilty

to a specific charge, the trial judge imposes sentence without knowledge of the history or general character of the defendant, so that he cannot, consistently with good administration, either grant or withhold the benefit of the statute. He therefore prefers to have the defendant make formal application, setting up such grounds as he may believe will justify his probation.

By summary rule served on the prosecuting officer, such as is now pending here, any adverse facts and circumstances to the contrary are brought to the court's attention, thus furnishing an opportunity for intelligent, uniform action by the court in all cases. Necessarily more time is consumed. Such procedure also brings the matter to hearing in open court, and tends to discourage the unseemly efforts of the parties interested and their friends to solicit and negotiate with a judge in chambers or in private. This tendency should be checked wherever possible, since it is unseemly that any part of a criminal proceeding should not be heard in open court.

So, too, if appellate proceedings are to be initiated, the defendants may well hesitate to apply for probation in advance thereof, since the application might be urged as an acquiescence in the judgment and sentence.

[1] My conclusion, therefore, is that the authority of the trial court to grant relief under the National Probation Act extends up to the date on which a warrant in execution of sentence is executed by an actual commitment thereunder in the place to which the prisoner is sentenced; that the sentence or judgment imposing the sentence cannot be altered or amended after the expiration of the term in which it was imposed, unless jurisdiction of the case has been specially held by proper order extending the term time therein; that the mandate of the Circuit Court of Appeals affirming the conviction is absolute in its terms quoad such judgment and sentence, but that the execution thereof, by virtue of the Probation Act of March 4, 1925, rests with the court a qua, under that clause of the mandate of the appellate court which commands that "such execution and further proceedings be had in said cause, as according to right and justice, and the laws of the United States, ought to be had, the said writ of error notwithstanding."

This commanding clause of the mandate is taken literally, and necessarily so, because, except for the arrest of execution of the judgment by the writ of error or appeal, and the resultant supersedeas which operates of right in favor of the plaintiff in error, or appellant, the trial court would have proceeded in the usual course with such an "execution" or such "further proceedings," which under the law would necessarily include the hearing of an application for probation.

[2] Upon the merits of the application, I am persuaded by only some of the representations made on behalf of the defendants, and am impressed thereby differently with respect to the several individuals. With respect to defendant Jerome Gargano, I am not at all disposed to believe that the granting of probation and a suspension of sentence as to him will subserve the ends of justice and the best interest of the public, within the meaning of the statute. He was the initiatory agent in provoking the other two, viz. Di Christina, his father-in-law, and president of the brewing company, and Locicero, the vice president, and was the efficient moving actor in inducing these two to join in his unlawful scheme or conspiracy, and to give their sanction and authority for the payment of the bribes with the company's money. Moreover, it was developed on the trial that he had previously, on his own account, engaged variously in violations of the Prohibition Act (27 USCA); prompting and encouraging others therein. These other two elderly men, however, have established that their previous history was honorable, and that they were upright, respectable citizens of some standing in their social and business circles in the city, and of good general reputation; and whilst their participation in the offense was complete, and they were fairly tried, convicted, and sentenced, I am disposed to believe that their status, characters, and previous good records will sustain the finding that the grant of the relief prayed for will subserve the best interest of the public and the ends of justice.

Accordingly the application for probation of Jerome Gargano will be denied, whilst that on behalf of Charles Di Christina and Gaspar Locicero will be allowed, and the usual order may be entered, designating Mr. O. D. Jackson as probation officer without pay, and conditioned upon their not being interested in, financially or otherwise, any brewery or beverage factory or catering business of any kind whatsoever during the ensuing five years, and further that they be involved in no violation of any law, federal or state, during the same period.