## UNITED STATES v. GUTHRIE.

No. 6732.

District Court, W. D. Tennessee.

June 6, 1935.

William McClanahan, U. S. Atty., of Memphis, Tenn., for the United States.

Bailey Walsh, of Memphis, Tenn., for defendant.

MARTIN, District Judge.

A written motion for a new trial was filed by the defendant, through his attorney, on May 17, 1935, in which it is averred, inter alia, that, at the trial of the defendant, resulting in his conviction, the learned and distinguished predecessor judge of this court erred in specified particulars, because of the serious illness from which he was suffering, which resulted in his death. The motion is respectful and deferential to the memory of the able departed jurist, and is grounded upon his alleged lack of normal tolerance, due to his ill health at the time of the trial. Accompanying affidavits of attorneys, J. A. Whipple and David G. Caldwell, are filed in support of the facts averred in said motion.

It appears that the defendant is now serving the sentence imposed upon him at the trial, and is incarcerated in a federal penitentiary at Atlanta, Ga. The former judge of this court died before a motion for a new trial could be presented to him; and the said motion is now seasonably presented, before the expiration of the term at which the defendant was convicted.

The United States District Attorney contends that the court is now without jurisdiction to consider this motion, for the reason that the convicted defendant has entered upon the serving of the sentence imposed upon him; and cites as authority for his position United States v. Murray, 275 U. S. 347, 48 S. Ct. 146, 72 L. Ed. 309,

**2**

in which it was held that when a person sentenced to imprisonment by the federal court has begun to serve his sentence, the court has no power, under the Probation Act of March 4, 1925 (18 USCA §§ 724–727), to grant him probation, even though the term at which sentence was imposed has not expired.

In the judgment of this court, the contention is unsound. United States v. Benz, 282 U. S. 304, 51 S. Ct. 113, 75 L. Ed. 354, decided in 1931, is directly controlling and settles the issue. This pronouncement of the highest court in the land asserts that a federal District Court, which has imposed sentence of imprisonment upon a defendant in a criminal case, has power, during the same term of court, to amend the sentence by shortening the term; although the defendant already has been committed and has entered upon service of the sentence.

Mr. Justice Sutherland, in rendering the opinion, cites and distinguishes the case of United States v. Murray, supra, relied upon by the government. The court in the Benz Case likewise shows the inapplicability of the early case of Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872, wherein it was held that, when a court has imposed a fine and imprisonment where the statute only conferred punishment by fine or imprisonment and the fine has been paid, it cannot, even during the same term, modify the judgment by imposing imprisonment instead of the former sentence.

In the Lange Case, supra, in a learned discussion, Mr. Justice Miller demonstrated conclusively the lack of power in the trial court to increase the severity of the sentence, after the convict has entered upon the service of his sentence, previously pronounced.

An affirmative answer was given by the Supreme Court in United States v. Benz, supra, to this question: "After a District Court of the United States has imposed a sentence of imprisonment upon a defendant in a criminal case, and after he has served a part of the sentence, has that court, during the term in which it was imposed, power to amend the sentence by shortening the term of imprisonment?" (282 U. S. 304, page 306, 51 S. Ct. 113, 75 L. Ed. 354.)

██ The District Court, having the power before the term ends to amend a sentence by shortening the term of imprisonment, a fortiori, has power to grant the defendant a new trial, if it be proven that he has been denied his constitutional guarantee. It follows that it is the duty of this court to consider the motion for a new trial filed in this case.

Questions of fact, determinative of the issue on this motion for a new trial, are raised by the motion and the accompanying affidavits. These issues of fact should be tried on oral proof and not on ex parte affidavits. Accordingly, the motion for a new trial will be set for hearing at a reasonable time hence, sufficient to afford ample opportunity, to both the defendant and the United States District Attorney, for the preparation for trial and the production of proof. Counsel have stated that two weeks' time will be sufficient.

The court will, therefore, hear proof upon the motion for a new trial in Jackson on Thursday, June 20, 1935, at 10 o'clock a. m.

## Upon Consideration of Motion for New Trial on Oral Proof.

In this case, the motion for a new trial, heard on oral proof, presents the issue of fact as to whether or not the able predecessor judge of this court, the Honorable Harry B. Anderson, was at the time of the trial suffering such physical pain and mental anguish as would render him incapable of exercising his normal high intelligence and sound judgment in the trial of the case. The hearing has been full and complete, in an exhaustive effort to ascertain the facts determinative of the issue.

Messrs. Caldwell and Whipple, attorneys, the first named of whom represented the defendant at the trial, testified to the highly nervous condition of the judge during the proceeding.

Dr. Jere Crook, a well-known and highly respected physician, testified frankly as to the physical and mental condition of the judge, when the latter came to the doctor's hospital for treatment immediately following the trial. The doctor testified that the judge, suffering from angina pectoris, had taken thirty-five grains of aspirin before going on the bench on the morning of the trial. An extremely depressed condition had resulted; but the doctor testified that, despite intense agony, the judge was in sound mental condition immediately following the trial. The doctor—in response to a question from the court—testified that the judge, who was his intimate friend and brother-in-law, was a warm-hearted hu-

manitarian. The attitude of Dr. Crook displayed an obvious desire to reveal all circumstances which could throw light on the judge's condition at the time of the trial. He stated that while the judge was not entirely himself, as no man could be, suffering with such intense pain, he was nevertheless in full possession of his mental faculties.

All twelve jurors who rendered the verdict of guilty testified at the hearing; and each stated under oath and cross-examination by the defendant's attorney that the verdict of the jury was not brought about, or even remotely affected by any remark of the distinguished judge, or by his attitude toward the defendant during the trial. They testified, further, that upon retiring to consider their verdict, they promptly reached a unanimous decision and found the defendant guilty on the first ballot.

The revenue officers who arrested the defendant testified that, when apprehended, he was in a room in which weapons were accessible; but that they moved in upon him so swiftly that the defendant had insufficient time to arm himself, had he desired to resist arrest.

The deputy clerk of the court, Harry Hoegemann, who for six years, approximately, had been present in court during the conduct of trials before the distinguished predecessor judge, testified that it was an invariable practice of the judge to deal severely with, and to impose heavier sentences upon, defendants in all cases in which the judge was of the opinion that the defendant was lying and in all cases where the proof showed that the defendant, when arrested, was in possession of firearms. This policy of the court in previous cases was also proven by other testimony. So, it is apparent that no greater severity was exhibited by the judge toward the defendant in this case than was displayed by him in all cases of like character, previously tried.

██ Upon the entire record in this case, it is clearly evident that the defendant was guilty beyond reasonable doubt; that he was properly found so by the jury; that he had a fair and impartial trial, and was therefore subject to punishment for violation of the laws of the United States which he was charged with violating. It is further conclusively established that no remark of the able trial judge remotely influenced the verdict of the jury upon the finding of guilt.

██ The question for the successor judge on the motion for a new trial is not what sentence he, himself, would have imposed; but is properly whether the defendant had the benefit of a fair and impartial trial. The present judge of this court is of the opinion that the defendant was fairly convicted and sentenced, and received full protection of his constitutional rights.

The present judge of this court is constrained to leave undisturbed the sentence which his patriotic predecessor imposed, and the court will not refrain from commenting upon the fine exhibition by the lamented departed jurist of a high sense of public duty. Distraught with pain and suffering intense agony, Judge Harry B. Anderson carried on the court. The judge dies, but the court goes on. The last official judgment pronounced by Judge Anderson is affirmed and upheld by his successor.

Let the motion for a new trial be denied.