**UNITED STATES of America, Plaintiff,**

v.

**Eugene GOLPHIN, Defendant.**
**Crim. No. 68–291.**

United States District Court,
W. D. Pennsylvania.

Aug. 15, 1973.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for plaintiff.

John J. Dean, Pittsburgh, Pa., for defendant.

## OPINION

DUMBAULD, District Judge.

This case presents the interesting and important question whether the Court's power to reduce a sentence, granted by Rule 35 F.R.Cr.P.,[1] when timely exercised but after defendant has commenced service of a term of imprisonment which was part of the original sentence, includes the power to relieve defendant from confinement and release him on probation.

At the time of original sentence the Court was impressed by defendant's work record and suggested application within the 120 day period if a return to employment materialized *bona fide*, as it did, and defendant is now working. He is not being supported by the taxpayers either in prison or on relief.

The Government contends, and the argument is one which deserves and has received this Court's serious consideration, that United States v. Murray, 275 U.S. 347, 358, 48 S.Ct. 146, 72 L.Ed. 309 (1928) precludes such an exercise of power. An elaborate dictum in United States v. Ellenbogen, 390 F.2d 537, 540 (C.A.2, 1968), is also cited to establish a supposed distinction between the power to reduce a sentence and that to suspend its execution and grant probation. The actual issue decided in *Ellenbogen,* however, was that the District Court had no jurisdiction of the case *ueberhaupt* because of the pendency of an application for certiorari.

However, we are impelled to conclude that the doctrine of *Murray,* decided in 1928, necessarily underwent modification when Rule 35, to which we must give the weight of Congressional authority, took effect in 1946 and was reconfirmed in 1966.

In our judgment the power given by Rule 35 would have no meaningful effect if the Court in reducing a sentence were not free to consider all alternatives that were available at the time of imposition of the original sentence.

As Chief Justice Taft sagely observed (275 U.S. at 356, 48 S.Ct. at 149) Congress did not mean by the Act of 1925 (43 Stat. 1259) to subject judges "to the applications [for probation] of convicts during the entire time until the full ending of the sentences." But later in 1946 and 1966 Congress *did* decide to subject judges to such applications for 120 days after imposition of sentence.

The Government concedes that it would be a permissible *reduction* of sentence if the number of years or dollars were diminished. We think the Court is likewise authorized to use any of the modern techniques of present-day penology which would have been proper at the time of original sentence, and is not limited to operations involving pecuniary or incarcerative *quanta* when effecting a reduction of sentence.

Just as "by common understanding," as Justice Holmes said in Biddle v. Perovich, 274 U.S. 480, 486–487, 47 S.Ct. 664, 71 L.Ed. 1161 (1927), imprisonment for life is a less penalty than death (although a punishment of a different sort), so we are convinced that "by common understanding" probation is considered to be less severe and more lenient than imprisonment. To grant probation in lieu of imprisonment is hence obviously a reduction of the sentence. To hold otherwise would be to exalt distinctions without a difference and fly in the face of common sense and the will of Congress as embodied in Rule 35.

Accordingly, the Government's motion is denied.

1. First adopted in 1946, but amended in 1966 to extend the time to 120 days from the date of sentence.