UNITED STATES of America

v.

William Holloway DAVIS, Appellant.

No. 86–3697.

United States Court of Appeals,
Third Circuit.

Argued May 20, 1987.

Decided Sept. 8, 1987.

Rehearing Denied Oct. 1, 1987.

George E. Schumacher, Federal Public Defender, Frank Arcuri (argued), Pittsburgh, Pa., for appellant.

J. Alan Johnson, U.S. Atty., Constance M. Bowden (argued), Asst. U.S. Atty., Pittsburgh, Pa., for appellee.

Before SLOVITER, BECKER and GARTH, Circuit Judges.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

SLOVITER, Circuit Judge.

In an opinion filed today in an unrelated case, *United States v. Camarata,* 828 F.2d 974 (3d Cir.1987), we considered whether a district court has the authority to revoke probation on the basis of violations of conditions of probation occurring after the beginning of service of a custodial term but prior to the beginning of a consecutive term of probation. A similar issue is presented on this appeal by William Holloway Davis who challenges the revocation of his probation.

### I.

Davis pled guilty to one count of a multiple count indictment charging him with possession of stolen checks in violation of 18 U.S.C. § 1708. Davis was sentenced to four years imprisonment "and on condition that the defendant be confined in a jail type or treatment institution for a period of 90 days," the execution of the remainder of the sentence was suspended and Davis was put on probation for three years beginning after release from the 90 days confinement. App. at 12.[1] The district court recommended that Davis be confined at the Southside Community Treatment Center in Pittsburgh so that he could "participate in a work release program." App. at 12.

Davis began serving his 90 days at the Goodwill Community Treatment Center in Pittsburgh (Center) where he participated

---

1. At the sentencing hearing the judge stated that Davis was placed on probation for five years. Tr. of Sentencing Proceedings at 6 (Aug. 5, 1986). The judgment and commitment order states that Davis was placed on probation for three years, App. at 12, and at the probation revocation hearing, the judge reconfirmed that probation was originally set for three years. App. at 18. There is no dispute that whatever the original probationary term, the district court could resentence Davis to the originally imposed four years of custody.

in a work release program. While Davis was at the Center, the chairman of the Center's disciplinary committee informed the United States Probation Office that Davis had violated the conditions of his incarceration at the Center by failing "to return from work to the center in a timely manner on several occasions." App. at 19.[2] As a result of his program failures, Davis had two hearings before the Center's disciplinary committee. At an October 10, 1986 disciplinary hearing, Davis was instructed to repeat the orientation phase of the Center's program. At a November 5, 1986 hearing, Davis was informed that as a result of his failures, he would ordinarily be terminated from the Center's program and removed by the United States Marshal's Service to a Bureau of Prisons facility. Davis was not removed from the Center because his scheduled release date, November 7, 1986, was only two days away.

On November 6, 1986, the United States Probation Office for the Western District of Pennsylvania petitioned the district court for a revocation of Davis' probation on the basis of Davis' failure to abide by the rules and regulations of the Center. Davis was released from the Center to his probationary term on November 7, 1986. On November 13, 1986, the district court held a probation revocation hearing. Following the hearing, the district court revoked Davis' probation and resentenced him to four years incarceration. Davis appeals.[3] We have jurisdiction under 28 U.S.C. § 1291. The only issue raised by Davis is a challenge to the authority of the district court to revoke his probation based upon infractions which occurred while he was serving a federal sentence. Our review of that issue is plenary.

## II.

At the hearing before the district court on revocation of probation, a probation officer testified that the probation office was notified by the Center of four infractions by Davis of the rules and regulations of the Center between October 4, 1986 and November 4, 1986. *See* note 2 *supra*. The Assistant Director of Rehabilitation Services at the Center testified that the two "primary" infractions were Davis' signing out on October 4, 1986, stating his "purpose" as being his place of employment, on a day he was not scheduled to be at work, and his failure to return expeditiously to the Center on November 1, 1986 after being scheduled to be off work at noon and only returning to the Center at approximately 6:55 p.m. App. at 24–26. Davis testified that on November 1, 1986, although he punched out at 12:15 from his job, he stayed at his place of business until 4:00 because his job had been changed from cashier to dairy manager and he was being shown "how to arrange the produce and the different things in the dairy section of the store," that the bus to return to the Center didn't come for 15 or 20 minutes, and that he did not get to the neighborhood in which the Center is located until approximately 6:00 p.m. when, under the applicable rules, he was required to get his food and bring it with him, which he did. He did not explain the October 4 incident before the district court, but an exhibit admitted in evidence contains the notation by the Center's Disciplinary Committee that Davis "went to his Father-in-Law's house to help him move." Exhibit 4 to Tr. of Probation Violation Hearing (Nov. 13, 1986). Davis

---

**2.** Davis' violations were the following: on October 3, 1986, Davis finished work at 3:15 p.m. but failed to return to the Center until 11:00 p.m.; on October 4, 1986, Davis signed .out of the Center for work but did not go to work; on October 6, 1986, Davis signed to report for work at 11:00 a.m. but did not report to work until 1:00 p.m.; and on November 1, 1986, Davis finished work at approximately 12:10 p.m. but failed to return to the Center until 7:00 p.m.

**3.** Davis also filed a motion in the district court for bail pending appeal and a stay of sentence

pending appeal. The district court denied the motion without hearing. Davis then filed a motion with this court for bail pending appeal, and we ordered the district court to hold a hearing on Davis' motion in compliance with 18 U.S.C. § 3143(b). *United States v. Davis*, No. 86–3738 (3d Cir. Dec. 18, 1986), App. at 91. Following a hearing, the district court again denied Davis' motion. App. at 103. Davis then again moved this court for bail pending appeal, and we denied his motion. *United States v. Davis*, No. 87–3008 (3d Cir. Jan. 27, 1987).

does not dispute on appeal that he committed the infractions of the rules of the Center which were the basis upon which the district court revoked his probation.[4] Moreover, Davis does not argue that his infractions were not a valid basis upon which to revoke probation; compliance with the rules of the work release program was an explicit condition of his probation.

In arguing that the district court had authority to revoke Davis' probation, the government relies on our prior decision in *United States v. Veatch,* 792 F.2d 48 (3d Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986), where we sustained revocation for occurrences between sentencing and the beginning of a custodial term. Davis contends that *Veatch* is distinguishable since Davis' infractions occurred while Davis was in the custody of the Attorney General.[5] Davis relies on *Affronti v. United States,* 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62 (1955), and *United States v. Murray,* 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309 (1928), as authority for the argument that probation may not be revoked on the basis of incidents occurring prior to the beginning of the probationary term while the prospective probationer is in the executive's custody.

Davis' argument is similar to that made by appellant in *United States v. Camarata,* 828 F.2d 974 (3d Cir. 1987). In my opinion in that case I expressed my belief that "the sentencing court retains the power to revoke probation for violations of the conditions of probation, even though those violations occurred while defendant was still in custody." *Id.* at 981. Moreover, the policy concern underlying *Affronti* and *Murray,* a desire to avoid overlap between the judiciary's power to grant probation and the executive's powers of clemency and parole, is implicated even less here than it was in *Camarata.* Because Davis was sentenced to less than six months custody and the district court made no specific provision for parole, Davis was never eligible for parole. *See* 18 U.S.C. § 4205(f).

Davis' custodial sentence provided him with an opportunity to prove his ability to comply with the conditions of probation. Instead, the district court determined that Davis' infractions demonstrated that even while subject to the highly structured Center environment, he was unable to comply with those conditions. In such circumstances, I do not believe that Congress intended the district courts to be without the authority to revoke probation and impose a custodial term. I believe that the district courts retain the authority to determine that violations of the conditions of probation committed by a prospective probationer while in a work release program warrant probation revocation.

### III.

Because Judge Becker, albeit for different reasons, agrees with me that the district court did not exceed its authority, we will affirm the revocation of Davis' probation.

---

**4.** Since the issue on appeal is confined to the authority of the district court to revoke Davis' probation, no argument is made with respect to the severity of the sentence of four years imprisonment for probation violation. Apparently one of the factors considered by the district court was Davis' failure to pay various monies in fines and costs that he owed in the Allegheny County court. *See* App. at 57. I cannot help but note, however, that in *Camarata,* a case arising from a different district in Pennsylvania, the district court revoked Camarata's probation for the far more serious reason that Camarata committed additional crimes while in federal custody and resentenced him to 21 months imprisonment. Davis does not challenge on appeal the legality of the sentence. Our disposition of this appeal, of course, will not preclude Davis from filing a timely motion under Fed.R. Crim.P. 35(b) for reduction of sentence.

**5.** At the probation revocation hearing, the district court appears to have suggested that while at the Center Davis was "not under the custody of the Bureau of Prisons," but rather remained under the court's "jurisdiction." App. at 63–64. This is incorrect. Davis was sentenced by the court to 90 days in the custody of the Attorney General. The Center in which Davis was residing operated under a contract as an agent of the Bureau of Prisons. App. at 64. Therefore, when Davis began serving his 90 days at the Center, he entered into the custody of the Attorney General.

EDWARD R. BECKER, Circuit Judge, concurring.

My position in this case is similar to my position in the companion case, *United States v. Camarata,* 828 F.2d 974 (3d Cir. 1987):

> Judge Sloviter persuasively demonstrates that the probation statute does not deprive a district court of the power to revoke probation prior to its formal onset, even though incarceration may have already begun. Judge Garth persuasively demonstrates why we need to be concerned about a conflict between executive and judicial power with respect to an incarcerated prisoner.

And as in *Camarata,* I find no conflict between the executive and judicial branches, hence I concur in the result reached by Judge Sloviter—upholding the revocation of probation without addressing the question that divides my colleagues. Because the facts here differ from *Camarata,* however, so does my *ratio decidendi.* It will be useful, therefore, to summarize the salient facts.

On August 6, 1986, after he was convicted of stealing checks, Davis received a "split sentence," 18 U.S.C. § 3651. The district court suspended a four-year sentence of incarceration and ordered Davis confined for 90 days, with three years subsequent probation subject to a special condition of restitution of $513.50 (the amount of the stolen checks). The district court recommended and the Bureau of Prisons (as surrogate for the Attorney General) agreed that Davis be confined at the Southside Community Treatment Center (CTC) in Pittsburgh so that he could participate in a work release program.

## I.

The first basis of my belief that there is no meaningful conflict between the executive and judicial branches in this case stems from the nature of Davis' confinement at CTC. I do not gainsay that, given the form of the district court's judgment and commitment, Davis was technically under the custody of the Bureau of Prisons while in the CTC. But it may have been only an accident that the district court structured the sentence so that the Attorney General had custody. That is because under 18 U.S.C. § 3651 CTC confinement may equally be a condition of probation. Many CTC inmates arrive there via a judgment and order of probation and hence remain under the direct authority of the district court. The same is true under the new sentencing statute scheduled to take effect on November 1, 1987, 18 U.S.C. § 3563(b)(12); *see also* U.S. Sentencing Commission Guidelines, § 5B1.3(d) (conditions of probation include intermittent confinement); § 5B1.4 (residence in CTC or halfway house may be imposed as condition of probation); § 5F5.1 (same). Congress has recognized that community confinement is very different from incarceration; as often as not the court itself directly supervises the community confinement,[1] hence the putative conflict is muted, if not eliminated.

Judge Garth has identified loss of good time as a source of potential conflict between the executive and the judiciary. *See Camarata,* at 983 (Garth, J., dissenting). But a prisoner sentenced for ninety days cannot receive good time. 18 U.S.C. § 4161. Another potential conflict could result because of parole but, as Judge Sloviter has pointed out, Davis was not eligible for parole. Additionally, disciplinary options in a CTC are quite diminished. Thus the Bureau's institutional discipline role is seriously attenuated. Halfway house residents are rarely there—they are out working during the day—and institutional morale and discipline problems are radically different from those in a prison. Indeed the violations involved here are much more an affront to the authority and dignity of the court (and were so viewed by it) than to the Bureau of Prisons.

Moreover, the action taken by the court is totally congruent with the kind of action that could be taken by the Bureau—return

---

1. Indeed, the record in this case reveals that a probation officer and the district court itself both thought that Davis was under the jurisdiction of the Court, not the Bureau of Prisons. (A63, 64.)

to custody. Of course the term was longer, but all in all I do not perceive the type of conflict between executive and judiciary in the CTC context that gives cause for the type of concern expressed by Judge Garth.

## II.

My second basis for finding no conflict in this case stems from the timing of the district court's action. Davis reported to the CTC on August 11, 1986. The violations of CTC rules described in Judge Sloviter's opinion occurred in October and November. The petition for violation of probation was filed on November 6, 1987. Davis was released from the CTC on November 7, 1986. The probation revocation hearing was held on November 13, 1986, and the district court revoked probation on that very day. Thus, when the district court acted the Bureau of Prison's custody over Davis had ended, and any conflict of the type with which Judge Garth is concerned was illusory. *See also Camarata*, at 981 (Becker, J., concurring).[2]

I do not suggest that district courts can always obviate the possibility of Judge Garth's putative conflict by waiting until a defendant has been discharged from Bureau of Prisons custody before acting. There are several reasons for insulating Bureau of Prisons decisionmaking from actions by judges that might impose additional sanctions for inmate conduct that could also be the subject of Bureau action. In *Camarata* I have identified institutional morale considerations. At 981 (Becker, J., concurring). Also relevant is the ability of the Bureau to predict when the inmate will be eligible for release and thereby assist him in meaningful pre-release planning, and to apply its range of administrative discretion to the inmate's total institutional exposure. But none of these considerations, if they are ever sufficient to override the force of Judge Sloviter's opinion in *Camarata*, apply here in view of the

promptness with which the court acted and the relative non-involvement of the Bureau in CTC affairs which are, after all, managed by contractors, not by Bureau of Prisons personnel.

## III.

The short of it is that the kind of conflict between executive and judicial authority which Judge Garth is concerned with simply does not exist here, just as I concluded that it did not in *Camarata*. That is not to say that there are not situations in which such a conflict will exist, and when it does this court must face that difficult question.[3] But in my mind that question need not be answered here. In the absence of a conflict, I agree with Judge Sloviter that the district court acted properly in revoking Davis' probation. I therefore concur in the judgment.

GARTH, Circuit Judge, dissenting:

I dissent from the court's judgment in this case, just as I have dissented from the court's judgment in *United States v. Camarata*, 828 F.2d 974, also filed today. I do so essentially for the same reasons I expressed in my *Camarata* dissent. I would hold that the district court in this case did not have the authority to revoke William Davis' probation. In my opinion, a district court does not possess the statutory authority to revoke a prisoner's probation for events which occurred during the time that the defendant was in prison and, therefore, in the custody of the Bureau of Prisons.

## I.

In the instant case, William Davis was sentenced to a split sentence: a 90–day term of incarceration in a Bureau of Pris-

---

**2.** Judge Garth makes much of the fact that Davis was in custody when the petition was filed. But since he was released from custody before it was acted on (and probably even before it was served), I fail to see the significance of Judge Garth's point.

**3.** I am not sure that the answer is an "all or nothing" answer, as my two colleagues' opinions suggest, e.g., the result may be different as between the murder of a prison guard and a minor infraction of prison rules.

ons facility[1] followed by a term of probation. Davis was specifically directed to serve his 90–day term of incarceration at the Goodwill Treatment Center, a residence facility which would permit his continued employment. By the terms of the sentence imposed, the district court was to assume probationary jurisdiction at the end of Davis' term of imprisonment.

Davis, however, did not obey the rules of the community treatment center. Davis was disciplined by the Center's disciplinary committee and ordered to undergo for a second time the Center's orientation program. Despite Davis' "reorientation," he continued to have problems, and he appeared in a second hearing before the disciplinary committee. The committee decided not to punish Davis for his further infractions, because he was to be released in a few days. A day before Davis' probationary sentence was to commence, however, the probation authorities sought to have his probation revoked by filing a petition with the district court. Davis' infractions, committed while he was in custody, formed the basis for the petition. Thus, contrary to the argument made by Judge Becker in his concurring opinion, Davis was in custody at the time the infractions occurred *and at the time* that the probation authorities improperly invoked the jurisdiction of the district court—a jurisdiction that could not attach while Davis was still in custody.[2] The district court, observing that it had held "jurisdiction" over Davis from the time of his original sentencing, revoked his probation and resentenced him to four years of imprisonment.

1. The district court, under 18 U.S.C. § 3651, could have required Davis' residence in a community center for any or all of the period of probation. In such a case, however, the residence requirement would not be a sentence of incarceration, but a condition of probation.

2. It is true that Davis was not in *physical* custody of the Attorney General at the time of his probation revocation hearing. But the date on which his hearing was held cannot change the fact that it was the Attorney General who had custody of Davis on November 6, 1986. Thus, no jurisdiction to revoke Davis' probation existed in the district court at the time the petition was filed.

## II.

This case, like *United States v. Camarata*, 828 F.2d 974 (3d Cir.1987), presents an example of a serious conflict between the powers and authority of the executive and judiciary branches. Here, Davis committed minor infractions during his residence in a Bureau of Prisons facility, and while he was under the control and authority of the executive branch to which he had been committed.

The first time the Bureau of Prisons took note of Davis' infractions, it punished him by ordering that he again undergo the orientation phase of the Center's program. The second time the Bureau of Prisons addressed Davis' infractions, it *chose not to punish him at all.* The district court, however, giving more significance to the infractions than the Bureau of Prisons obviously thought was warranted, then used the same infractions committed by Davis as the basis for revoking his probation.

Thus Davis was found to have violated the conditions of his probation before his probationary term started and during the time that he was in the custody and under the charge of the executive branch, *i.e.,* the Bureau of Prisons.[3] The Fifth Circuit's reasoning and analysis in *United States v. Wright*, 744 F.2d 1127 (5th Cir.1984), which I have discussed in the companion case filed today, *United States v. Camarata*, 828 F.2d 974 (3d Cir.1987), seems particularly apt in this situation. Here it is apparent that there was a clear conflict between the sentencing court and the Bureau of Prisons with regard to the appropriate pun-

3. I agree with Judge Sloviter's opinion, at 970 n. 5, that the district court erred in suggesting that it retained jurisdiction over Davis while Davis was in the custody of the Goodwill Treatment Center. Davis' custody was under the jurisdiction of the Attorney General and the fact that the probation authorities and the district court judge may have thought differently, *see* Judge Becker's Concurring Opinion at 968 n. 1, cannot affect either the Attorney General's jurisdiction over Davis or the illegality of Davis' probation revocation.

ishment of Davis.[4] This clash is precisely the sort of conflict that the Supreme Court, in *Affronti v. United States*, 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62 (1955), has directed us to avoid. Consequently, I would hold that the district court overstepped the boundaries of its probationary authority as delineated by the express language of the statute and *Affronti*. It is evident that the district court's revocation of Davis' probation was improper.

Thus, in *Camarata*, where I detailed all of the reasons which led me to dissent from the court's judgment, I concluded that the district court had no authority to revoke probation where the prisoner had not yet begun his probationary term, but was in the custody of the executive branch at the time an unrelated offense was committed. Here the result is *a fortiori*.

I respectfully dissent here as I dissented in *United States v. Camarata*, 828 F.2d 974.

SUR PETITION FOR REHEARING

Before GIBBONS, Chief Judge, and SEITZ, WEIS, HIGGINBOTHAM, SLOVITER, BECKER, STAPLETON, MANSMANN, GREENBERG, SCIRICA and GARTH, Circuit Judges.

SLOVITER, Circuit Judge.

The petition for rehearing filed by *Appellant*, William Holloway Davis in the above-entitled case having been submitted to the judges who participated in the decision of this court and to all other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied. Judge

Mansmann would have granted rehearing. Judge Garth as a Senior Circuit Judge is remitted to voting only for panel rehearing. *See* 28 U.S.C. § 46; Internal Operating Procedures, Third Circuit, Chapter 9 B.3. Accordingly, Judge Garth would grant the petition for panel rehearing for the reasons set forth in his panel dissents in *United States v. Camarata*, 828 F.2d 974 (3d Cir. 1987) and *United States v. Davis*, 828 F.2d 968 (3d Cir.1987).

---

**4.** Judge Becker claims that the conflict here "simply does not exist," and is illusory. *See* Judge Becker's Concurring Opinion at 972. But the record clearly refutes Judge Becker's characterization because the petition for revocation was filed with the court on November 6, 1986, a date which preceded the completion of Davis' custody. Davis' custodial term was not completed until November 7, 1986. Moreover, Judge Becker's claim that the case presented no conflict between the executive and the judiciary ignores the fact that the probation authorities *had to know* that the Bureau of Prisons had not sanctioned Davis for the infractions committed while he was in custody. It was obviously for that reason that sanctions were sought (and obtained) from the district court.