**UNITED STATES of America**

v.

**James CAMARATA, Appellant.**

**No. 86–1766.**

United States Court of Appeals, Third Circuit.

Argued May 20, 1987.

Decided Sept. 8, 1987.

Rehearing and Rehearing In Banc Denied Sept. 30, 1987.

---

Jack A. Meyerson (argued), Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, James M. Becker (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before SLOVITER, BECKER and GARTH, Circuit Judges.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

SLOVITER, Circuit Judge.

### I.

After being convicted on multiple counts of a federal indictment, James Camarata was sentenced by the district court to both a term of custody and a consecutive term of probation. Before he completed serving his custodial sentence, Camarata committed New Jersey crimes to which he later pled guilty. The district court subsequently revoked Camarata's probation on the basis of the New Jersey crimes. Camarata appeals the revocation. His appeal presents the question whether a district court has authority to revoke probation on the basis of violations of the conditions of probation occurring after the beginning of service of a custodial term but prior to the beginning of the probationary term. A related issue is raised in *United States v. Davis*, 828 F.2d 968 (3d Cir. 1987), which is filed today.

### II.

Camarata was convicted on two counts of mail fraud in violation of 18 U.S.C. § 1341, three counts of foreign transportation of falsely made securities in violation of 18 U.S.C. § 2314, nine counts of bank larceny in violation of 18 U.S.C. § 2113(b), and one count of conspiracy to commit the above crimes in violation of 18 U.S.C. § 371. Camarata was sentenced to 48 months federal custody on one count of bank larceny to be followed by five years probation on the conspiracy count. Sentence on the remaining counts was suspended. Camarata was granted bail pending appeal of his conviction, which was thereafter affirmed. *United States v. Camarata*, 745 F.2d 48 (3d Cir.1984).

While on bail pending appeal, Camarata began serving a New Jersey state sentence in the New Jersey state penitentiary at Leesburg. Subsequently, the district court reduced Camarata's federal sentence to 45 months with the recommendation that the Attorney General designate Leesburg as the institution for service of Camarata's federal sentence, which effectively made the federal sentence concurrent with the state sentence. The Attorney General accepted the district court's recommendation and designated Leesburg for service of Camarata's federal sentence.

On October 16, 1984, immediately after our affirmance of his conviction, Camarata filed a Rule 35 motion for a further reduction of sentence to time served. Camarata was scheduled for parole from his New Jersey sentence on October 30, 1984 and would ordinarily have been paroled to federal custody to continue service of his federal sentence. However, on October 26, 1984, in a somewhat unusual procedure occasioned by the failing health of Camarata's wife and her imminent surgery, the district court ordered "that upon ... Ca-

marata's release from the custody of the State of New Jersey to federal custody, which is scheduled to occur on October 30, 1984, he shall thereafter, that same day, be released from federal custody on a $20,000 OR bond until further order of this Court." App. at 12.[1]

On January 22, 1985, the district court granted Camarata's Rule 35 motion and reduced Camarata's federal sentence to 24 months federal custody to be followed by three years probation of which the first six months was to be served at a Community Treatment Center. Camarata was credited with all time served on his New Jersey sentence and was ordered to report to the Federal Correctional Institution at Allenwood, Pennsylvania by June 1, 1985 to serve the 14 month balance of his reduced federal sentence (exclusive of good time credit). The delay in resumption of the custodial sentence was "so as to permit Mr. Camarata to be with Mrs. Camarata during the balance of the current regime of chemotherapy." Supp.App. at 60.

In October 1985, while still in federal custody, Camarata was indicted by New Jersey for conspiracy to engage in theft by deception and issuance of bad checks, offenses similar to those for which he was serving his federal sentence. These crimes were committed by Camarata and three conspirators between January 1985 and October 1985, including the period after May 1985 while he was in Allenwood federal prison. In July 1986, Camarata pled guilty to the New Jersey state charges pursuant to a plea agreement under which he was assured that he would receive a sentence requiring neither incarceration nor restitution. When pleading guilty, Camarata expressly acknowledged that his state conviction "may result in a violation of [his federal probation] status." App. at 31. In September 1986, Camarata was sentenced to

probation, community service and a $1,000 fine.

Camarata was released from federal custody to his federal probationary term in the summer of 1986. In October 1986, after the New Jersey sentencing, the United States Probation Office for the Eastern District of Pennsylvania petitioned the district court to revoke Camarata's federal probation on the basis of the New Jersey conviction. After a hearing, the district court revoked Camarata's probation and resentenced him to 21 months in federal custody to be followed by five years probation. Camarata appeals, challenging the district court's authority to revoke his probation on the basis of a New Jersey offense occurring prior to the commencement of his probation. We have jurisdiction under 28 U.S.C. § 1291. Our review is plenary.

## III.

The authority to grant probation is conferred on courts by the Federal Probation Act, 18 U.S.C. §§ 3651–3656,[2] which provides that a court, "when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best." 18 U.S.C. § 3651. The court "may revoke or modify any condition of probation, or may change the period of probation," but the period of probation "shall not exceed five years." *Id.* "At any time within the probation period," the probation officer may, for cause, arrest the probationer without a warrant. 18 U.S.C. § 3653. Following such an arrest, "the court may revoke the probation and require [the probationer] to serve the sentence imposed, or any lesser sentence, and if imposition of sentence was suspended, may im-

---

1. The district court's authority to order bail pending resolution of the motion to reduce sentence was unchallenged, and is not before us on this appeal.

2. The Comprehensive Crime Control Act of 1984 repealed the Federal Probation Act and replaced it with new statutory provisions governing pro-

bation. *See* 18 U.S.C. §§ 3561–3566 (Supp. III 1985). The repeal and the new statutes are not scheduled to become effective until November 1, 1987. *See* Pub.L. No. 98–473 § 235(a)(1), 98 Stat. 1976, 2031, *as amended by* Pub.L. No. 99–217 § 4, 99 Stat. 1728.

pose any sentence which might originally have been imposed." *Id.*

Camarata argues that the trial court had no power to revoke his probation for actions occurring prior to the commencement of his probation while he was in the custody of the Attorney General serving a term of incarceration.[3] This argument raises two separate questions: 1) does the statute itself, which is silent on this issue, preclude revocation of probation for actions of the defendant which occurred before the beginning of his probationary term? and 2) even if the statute is not preclusive, are there other reasons to deny such authority to the district court?

This court recently upheld revocation of probation on the basis of a crime committed while defendant was on bail pending appeal. We held "that a district court may revoke probation if a defendant violates the conditions of probation in the period between the date of sentencing and the date of incarceration." *United States v. Veatch,* 792 F.2d 48, 52 (3d Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986).[4] In so holding, we expressly declined to follow the contrary holding of the Seventh Circuit in *United States v. Dick,* 773 F.2d 937, 944 (7th Cir. 1985).[5]

[1] Thus, I agree with the government that *Veatch* is controlling precedent that the probation statute does not confine the district court's power to revoke probation to consideration of acts committed during the probationary period.

Camarata argues that allowing revocation of probation on the basis of criminal activity occurring at least in part while Camarata was in federal custody [6] conflicts with the policy concerns underlying the Supreme Court's decisions in *United States v. Murray,* 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309 (1928), and *Affronti v. United States,* 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62 (1955). In *Murray,* the Supreme Court held that a district court was without power to suspend service of a sentence and grant probation after the defendant had begun service of the sentence. In *Affronti,* the Court extended *Murray* to hold that a district court was without power to suspend service of any of a series of consecutive sentences imposed on multiple counts of an indictment and grant probation after the defendant had begun service on the first of the consecutive sentences. In both *Murray* and *Affronti,* the Court stated that the Probation Act should be interpreted to "avoid interference with the parole

**3.** Significantly, Camarata does not argue that the actions that he concededly engaged in were not a valid basis upon which to revoke probation. Moreover, one of the standard conditions of probation printed on the reverse side of Camarata's Judgment and Commitment Order provides, "You shall refrain from violation of any law (federal, state and local)."

**4.** The Fifth Circuit had repeatedly so held. *See e.g., United States v. Dozier,* 707 F.2d 862, 864 (5th Cir.1983); *United States v. Ross,* 503 F.2d 940, 942–43 (5th Cir.1974). A later Fifth Circuit opinion characterized these decisions as applications of the fraud on the court exception. *United States v. Wright,* 744 F.2d 1127, 1131 (5th Cir.1984); *see also United States v. Dick,* 773 F.2d 937, 942–43 (7th Cir.1985).

**5.** Apparently all the circuits considering the issue hold that the district court has power to revoke probation prior to the beginning of the probationary term where the probationer has committed a fraud on the court by withholding from the court at sentencing information which would have altered the court's sentencing decision. *See Dick,* 773 F.2d at 942–43; *United States v. Torrez-Flores,* 624 F.2d 776, 784 (7th

Cir.1980); *Trueblood Longknife v. United States,* 381 F.2d 17, 19–20 (9th Cir.1967), *cert. denied,* 390 U.S. 926, 88 S.Ct. 859, 19 L.Ed.2d 987 (1968). *See also United States ex rel. Sole v. Rundle,* 435 F.2d 721, 725 (3d Cir.1971) (federal courts may, on basis of "fraud upon the court," revoke probation "for acts done by a probationer after sentence and before the probation sentence"). There is no contention that Camarata's revocation may be justified under the fraud on the court exception.

**6.** Camarata's state criminal activity occurred between January 1985, when he was free on bail pending resolution of his motion to reduce sentence, and October 1985. As set forth in the text, Camarata, after a temporary release, returned to federal prison on June 1, 1985. The concurrence's position is based largely on its belief that all of Camarata's misconduct occurred while he was on bail. The record does not support this belief. The New Jersey indictment specifically charges Camarata with acts taken after his return to federal prison on June 1, 1985.

and clemency powers vested in the Executive Branch." 350 U.S. at 83, 76 S.Ct. at 174; *see also* 275 U.S. at 357, 48 S.Ct. at 149. To accomplish this, both *Murray* and *Affronti* limited courts' ability to mitigate sentences after incarceration had begun, since at that time a prisoner becomes subject to the executive's parole and clemency powers.[7]

In *Veatch*, we recognized that *"Affronti* restricted the trial judge's discretion to revoke probation when it might conflict with the executive's prerogatives." 792 F.2d at 50. We held, however, that *Affronti* did not control because Veatch had committed his crime while at liberty pending appeal, and in that interval "there is no conflict between the court's authority and the executive's responsibility for confinement or clemency." *Id.* at 52.

Camarata argues that because he, unlike Veatch, was subject to the executive's parole and clemency powers at the time of the criminal conduct which formed the basis for his probation revocation, the policy considerations underlying *Affronti* and *Murray* require us to hold that the district court had no power to revoke his probation. He contends that because he was transferred from the federal prison at Allenwood to the federal prison at Danbury as a result of the New Jersey offense and was deprived of good time credit[8] and his scheduled release to a community treatment center, revocation of his probation with a resultant imposition of a new federal custodial sentence was inappropriately duplicative.

Camarata relies on *United States v. Wright*, 744 F.2d 1127 (5th Cir.1984), where the court held that a parolee's probation could not be revoked for a state crime committed while on parole prior to the beginning of a probationary term. The Fifth Circuit read *Affronti* as prohibiting "application of the probation provisions 'in such a way as to unnecessarily overlap the parole and executive clemency provisions of the law.'" *Id.* at 1130 (quoting *Affronti*, 350 U.S. at 83, 76 S.Ct. at 173). Noting that such "overlap certainly occurs if the probation statute is interpreted so as to permit the same pre-probation violation to serve as cause both to revoke the parole on a prior sentence and also to revoke the uncommenced probation on a consecutive sentence," the court held that "the district court was without power, once the defendant commenced service of the first of cumulative sentences, to grant or to revoke probation as to a consecutive sentence." *Id.* at 1130–31.

We need not decide how we would rule were Camarata's situation comparable to Wright's because Camarata was not on parole, and therefore was not subject to both parole and probation revocation for the same offense.[9] It is enough to note that probation revocation is a judicial function while parole revocation is an executive function. The ability of multiple authorities to impose multiple sanctions is "simply another manifestation of a central fact underlying modern federal criminal procedure: the power to determine the length and conditions of an individual criminal's punishment is dispersed between the judicial and executive branches." *Diggs v. United States*, 740 F.2d 239, 246 (3d Cir. 1984).

For example, Congress has vested in the sentencing judge the power to establish the minimum time a defendant must serve before parole eligibility. *See* 18 U.S.C. §§ 4205(a), (b); *see also United States v.*

---

**7.** Fed.R.Crim.P. 35(b) was amended in 1979 to provide that upon a motion brought within 120 days of sentencing, the district court may change "a sentence of incarceration to a grant of probation" even if the defendant has begun service of the sentence. The Advisory Committee Note makes clear that this "represents a change in the law" from *Murray* and *Affronti*. The district court's authority to reduce sentences remains strictly circumscribed by the 120 day time limit. *See United States v. Addonizio*, 442 U.S. 178, 189, 99 S.Ct. 2235, 2242, 60

L.Ed.2d 805 (1979) ("[t]he time period ... is jurisdictional and may not be extended").

**8.** Apparently, the transfer caused the loss of "extra good time," 18 U.S.C. § 4162, which is more likely to be earned in an institution such as Allenwood than one such as Danbury.

**9.** It appears that the *Wright* result may be affected by the passage of the Comprehensive Crime Control Act of 1984, *see* note 9 *infra*.

*Addonizio,* 442 U.S. 178, 189 n. 15, 99 S.Ct. 2235, 2242 n. 15, 60 L.Ed.2d 805 (1979). Rule 35(b) gives the district court the opportunity to reduce defendant's sentence within 120 days after the conclusion of appellate review of the conviction. The appellate review can take more than a year during which time the Parole Commission may have already issued the presumptive parole date. *See Diggs,* 740 F.2d at 246 n. 12. Since the sentencing court may thereafter, but still within the 120 days of Rule 35(b), reduce the sentence to a period below the presumptive release date set by the Parole Commission, it is evident that the scheme itself contains overlapping, rather than exclusive, spheres in which the courts and branches of the executive may affect the amount of time served by an individual defendant.[10]

The central issue therefore is whether the action taken by the district court interferes with the powers vested in another branch. In rejecting Camarata's argument that the *Affronti* rationale precluded revocation of probation in this situation, the district court concluded that *Affronti's* concerns apply only to grants of probation. A close reading of *Affronti* supports this construction. The Court stated that it was "concerned with the power to *grant* suspension of [unexecuted] sentences." 350 U.S. at 81, 76 S.Ct. at 173 (emphasis supplied). It framed the question as whether it should "read the statute to mean that courts should be able to *suspend* the uncommenced terms of a cumulative sentence after the prisoner has been imprisoned and entered upon the execution of a prior term?", and answered in the negative. *Id.* at 83, 76 S.Ct. at 173 (emphasis supplied).

*Affronti* did not deal with the district court's power to revoke probation. As Judge Pollak, the district court judge in this case, explained, "to revoke probation is not to pose the difficulties of overlap which conflict with the parole and clemency authorities" since "[r]evoking a probationary term which follows a term of incarceration does not stop the parole authorities from making such adjustments of the term of incarceration as they think appropriate." App. at 40–41. I agree. The authority in both the court and the Parole Commission to take appropriate action in response to new criminal activity by defendant, the former through revocation of probation and the latter through adjustment of the release date, is merely another manifestation of the dispersal of power referred to in *Diggs.* 740 F.2d at 246.[11]

In *Affronti,* the Court buttressed its conclusion that granting probation would unduly interfere with executive prerogatives by reasoning that because of the practicalities of sentencing, the judge "becomes progressively less familiar with the considerations material to the adjustment of the punishment to fit the criminal." 350 U.S. at 84 n. 13, 76 S.Ct. at 174 n. 13. The same consideration does not apply to revocation of probation. For example, the sentencing judge concededly retains authority to revoke probation for acts committed during the probationary period, even though they may occur a substantial time after the initial sentencing. When probation is revoked, rather than granted, based on subsequent action, the judiciary will have no lesser familiarity with the material considerations than the executive.

After all, probation is only a conditional suspension of a custodial sentence. The Supreme Court has characterized probation as "a matter of favor" granted as recognition that a convicted defendant may benefit

---

10. Judge Garth on several occasions in his dissenting opinion implies that the decision of the majority is contrary "to the terms of the probation statute." *See, e.g.,* Dissenting Opinion at 985. However, he never points to any language of the probation statute which governs this issue. Obviously, were there dispositive statutory language, we would not be faced with the difficult interpretive issue before us.

11. The conditions of Camarata's release on bail for the period from January 1985 to June 1985 are not in the record before us. Regardless of the conditions of Camarata's bail, under the statutory bail provisions applicable at the time Camarata could have been subjected to an additional consecutive federal sentence upon conviction for committing a crime while on bail, *see* 18 U.S.C. § 3147 (Supp. III 1985), but such an additional prosecution is within the discretion of the prosecuting official.

from an opportunity "to take advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable." *Burns v. United States*, 287 U.S. 216, 220, 53 S.Ct. 154, 155, 77 L.Ed. 266 (1932). Courts are granted "an exceptional degree of flexibility" in determining when to grant probation, and are left an equal flexibility in determining when to revoke:

> No criteria for modification or revocation are suggested which are in addition to, or different from, those which pertain to the original grant. The question in both cases is whether the court is satisfied that its action will subserve the ends of justice and the best interests of both the public and the defendant.

*Id.* at 220–21, 53 S.Ct. at 155–56.

In *Veatch*, we stressed that the power to revoke probation "permits the correction of a sentence based on an erroneous assumption that defendant would likely benefit from leniency." 792 F.2d at 52. We held that the sentencing court must be able to revoke probation because a defendant's "display of recidivous tendencies demonstrates that he is unworthy of the opportunity for rehabilitation." *Id.* If, as in *Veatch*, the sentencing court retains the ability to revoke probation for a display of recidivous tendencies that occurs prior to the beginning of service of a custodial sentence, there is no reason to deprive the court of the ability to revoke probation when the convicted defendant's display of recidivous tendencies does not occur until defendant is in custody. Were we to accept Camarata's argument that such a denial of authority is required, we would provide incarcerated defendants with a grace period in which their activity, no matter

how heinous, could not affect their probationary release into society. It is unlikely that Congress, which authorized probation, intended to deprive the original sentencing court of its continuing authority over the probationary sentence.

Under a different statute but using reasoning not inapplicable to this situation the Supreme Court held that the Youth Correction Act (now repealed) did not preclude a change in the imprisonment conditions of the original YCA sentence when a youth committed a crime in prison and thereby demonstrated that the original leniency in sentencing was no longer merited. *See Ralston v. Robinson*, 454 U.S. 201, 102 S.Ct. 233, 70 L.Ed.2d 345 (1981). *See also Thompson v. Carlson*, 624 F.2d 415 (3d Cir.1980).

Camarata raises the additional argument that if a court may revoke probation for conduct occurring prior to the commencement of a five year probationary period, this "in effect creates a probationary period longer than five years, which is beyond the statutory authorization." Appellant's Brief at 16. The opinion in *Dick*, which has so held, *see* 773 F.2d at 943–44, is not persuasive. The five year statutory limit on a consecutive probationary term limits the period in which the court may exercise supervision after defendant's release from custody. Our decision in *Veatch* establishes that the five year limit does not affect the district court's ability to determine that a defendant's conduct prior to the probationary term demonstrates both the inappropriateness of allowing the probationary term to begin and the need for a longer term of custody.[12]

---

**12.** Judge Garth's discomfort with the decision in *Veatch* is apparent, although he acknowledges that we are bound by it. Nonetheless, some of his arguments are contrary to both the holding and the spirit of *Veatch*. For example, the dissent argues that, "*Camarata* was not on probation at the time of the offense. He therefore could not have violated a condition of probation." *See* Dissenting Opinion, *infra* at 988. Veatch was not on probation at the time of his offense. We held that he violated a condition of probation. Similarly, the dissent's argument that the result of looking to offenses committed before

probation is to extend the permissible period of probation beyond 5 years, *see* Dissenting Opinion at 988, would also have been applicable in *Veatch* and have required a contrary result.

The dissent also suggests that the revocation of probation was an impermissible "resentencing" of *Camarata*. *Id.* Revocation of probation always effects a "resentencing," whether the basis for revocation are acts committed during the probationary period or acts committed before that period.

I would therefore hold that the sentencing court retains the power to revoke probation for violations of the conditions of probation, even though those violations occurred while defendant was still in custody.[13] Judge Becker, under a different analysis, would also affirm under the circumstances of this case.

## IV.

For the above reasons, we will affirm the district court's revocation of Camarata's probation.

EDWARD R. BECKER, Circuit Judge, concurring.

Judge Sloviter and Judge Garth have each written very logical opinions. Judge Sloviter persuasively demonstrates that the probation statute does not deprive a district court of the power to revoke probation prior to its formal onset, even though incarceration may have already begun.[1] Judge Garth persuasively demonstrates why we need to be concerned about a conflict between executive and judicial power with respect to an incarcerated prisoner. I find no such conflict in this case, however, because in my view Camarata was under the custody of the court, not the Attorney General, and was not subject to the Attorney General's action at the relevant times. In the absence of a conflict between the executive and judicial branches, I agree with Judge Sloviter that the district court had the power to revoke Camarata's probation, hence I would affirm. I do not reach the issue of the effect of such a conflict, as both Judge Sloviter and Garth do, because it is unnecessary.

## I.

My view of this case flows inexorably from the facts. Indeed my difficulty with both Judge Sloviter and Judge Garth's opinions stems from their overemphasis of abstract legal principles and failure to focus upon the two salient facts of the case: first, from the time Camarata was released on bail until he returned to Allenwood, he was under the custody of the district court, not of the Bureau of Prisons; and, second, all of Camarata's misconduct occurred during that time.[2]

While Camarata was serving both his state and federal sentences at Leesburg, he was obviously under the joint custody of the Attorneys General of New Jersey and the United States. However, that custody was interrupted when the district court released him on bail, and it was not resumed again until he was received in a federal institution. 18 U.S.C. § 3568. When Camarata was released on bail he was released to the custody of the district court, as the district court's order clearly indicates. Between October 26, 1984 and June 1, 1985 Camarata was responsible to the district court, not the Bureau of Prisons. *Cf. U.S. v. Roche*, 611 F.2d 1180 (6th Cir.

---

**13.** We noted in *Veatch*, 792 F.2d at 51, that our conclusion there was supported by the amendment of the statutory provisions governing probation in the Comprehensive Crime Control Act of 1984. Under a provision effective November 1, 1987, "[i]f the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation, the court may ... revoke the sentence of probation and impose any other sentence that was available ... at the time of the initial sentencing." 18 U.S.C. § 3665(a) (Supp. III 1985). The new legislation makes explicit Congress' agreement with the conclusion that we have reached here.

**1.** I also agree with Judge Sloviter's response to Judge Garth's argument concerning the five-year limitation on probation and her observations about the opaqueness of the probation statute.

**2.** Judge Sloviter and Judge Garth are correct that the formal charge against Camarata mentions misconduct after June 1, 1985.

However, I find the record to be clear that while Camarata's co-conspirators may have continued the conspiracy after Camarata was incarcerated, Camarata himself had no more involvement. A review of the Bureau of Prisons' detailed regulations on inmate discipline, Prohibited Acts and Disciplinary Severity Scale, 28 C.F.R. § 541.13 (1985) and the Bureau's proposed (amended) regulation on inmate discipline, 52 Fed.Reg. 20,-678 (1987) (to be codified at 28 C.F.R. § 541), makes clear that discipline is imposed only for acts violating institutional rules or threatening institutional security. Therefore, acts committed by Camarata's erstwhile confederates (even if he had not formally withdrawn from the conspiracy) do not appear to violate the Bureau of Prisons regulations.

1980) (failure to report to designated institution as per condition of bail constituted affront to the power and dignity of the court that admitted him to bail, hence venue on bail jumping indictment lay there and not in district where failure to report occurred).

I am not unmoved by Judge Garth's concern that if a judge were to revoke probation on account of an inmate's conduct in prison which could also be the subject of prison discipline, the judiciary might interfere with the hegemony of the prison wardens.[3] Perhaps, however, such a concern is exaggerated,[4] and the logic of Judge Sloviter's position may well outweigh Judge Garth's concerns. Fortunately, I need not resolve that dispute. The potential conflict between the executive and judicial branches is in this case, as I have explained above, non-existent.

Moreover, the putative conflict is further reduced, if not completely eliminated, by the fact that when the district court acted, Camarata had been completely discharged from the custody of the Bureau of Prisons and was not subject to its authority, disciplinary or otherwise. As I have explained, it is clear from the record that Camarata's misconduct occurred while he was enlarged on bail and in the custody of the court. I know of no authority reposing in the Bureau of Prisons to discipline Camarata, deprive him of good time, or otherwise adversely to affect him for misconduct that took place during that period. Suppositions about retrospective impact on prison morale are too ephemeral to undergird a decision about a conflict between the judicial and executive branches.

## II.

Judge Garth has argued with great force that the district court's action in this case directly conflicted with the actions of the executive and that it subjected Camarata to a double-barrelled attack: first, the executive reassigned him from a prison camp to a penitentiary, causing loss of good time and halfway house release, and then the district court gave him additional time. I believe, however, that the argument is incorrect.

While it is not entirely clear in the record, Camarata alleges, and the government does not deny, that after Camarata's October 1985 New Jersey indictment the Bureau of Prisons redesignated the Federal Correctional Institution at Danbury as the place for his confinement. Apparently this caused the loss of "extra good time," 18 U.S.C. § 4162, which is more likely to be earned in an institution such as Allenwood than one such as Danbury. That after the indictment the Bureau of Prisons (as surrogate for the Attorney General) changed the place for service of sentence is, however, of no legal significance. Congress has given the Bureau of Prisons broad discretion to transfer prisoners, 18 U.S.C. § 4082(b), apparently immune from judicial review. Therefore, I do not see how transfer can be deemed a form of punishment sufficient to implicate Judge Garth's concerns. Moreover, "extra good time," 18 U.S.C. § 4162, is not a matter of right, but only of the Bureau's discretion.[5]

Neither the putative loss of good time nor the assignment to a different institution (even with loss of release to a less confining institution such as a halfway house) flows from the exercise of executive authority that could be deemed to conflict with judicial actions while Camarata was under the custody and control of the district court.

---

**3.** It is arguable, for example, that judicial ability to retract probation and impose a longer sentence for prison infractions might present institutional morale problems, and cause friction between inmates and prison authorities because of the potential impact of disciplinary charges. On the other hand, it can also be argued forcefully that such a prospect will improve prison discipline and security for fear of the consequences.

**4.** It is unlikely that probation officers would move to revoke probation or that district judges would act favorably on such motions except in the most extreme cases, where it was clear that putative probationer had demonstrated his total unsuitability for probation.

**5.** Good time for good conduct, 18 U.S.C. § 4161, is not an issue here since it could not have been accumulated while Camarata was not in custody.

### III.

In the absence of a meaningful conflict between executive and judicial power, I agree with Judge Sloviter that the district court had the power to revoke Camarata's probation. I therefore concur in the judgment.

GARTH, Circuit Judge, dissenting:

I dissent from the decision reached by Judges Sloviter and Becker[1] in *United States v. Camarata*, 828 F.2d 974 (3d Cir. 1987), because I do not believe that a district court possesses the statutory authority to revoke a defendant's probation for events which have occurred after the defendant has begun his term of incarceration and prior to the commencement of his probationary term. Unlike my colleagues, I believe the Supreme Court decisions of *United States v. Murray*, 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309 (1928), and *Affronti v. United States*, 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62 (1955), continue to control our decision here.

The principles announced in *Murray* and *Affronti* regarding the conflict of executive and judicial power are as vital now as they were thirty years ago. Accordingly, in light of these dominant precedents, this court's decision in *United States v. Veatch*, 792 F.2d 48 (3d Cir.), *cert. denied*, — U.S. ——, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986), upon which my colleagues rest their decision, cannot be read to apply to other than the peculiar facts of that case, and cannot control the outcome of this case.

I would therefore hold, contrary to Judges Sloviter and Becker, that a district court does not have the authority to revoke a prisoner's probation because of an offense committed during the prison term of his sentence while the prisoner was in the custody of the executive branch, and prior in time to the commencement of the prisoner's probationary term.

1. I do not find it necessary to address Judge Becker's opinion because I do not believe the record supports the factual basis on which his opinion rests. Both Judge Sloviter and I point out that Camarata was indicted by the State of

### I.

#### A.

In *United States v. Murray*, 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309 (1928), the Supreme Court held that a district court did not have the power to shorten or suspend a prisoner's sentence of incarceration after the prisoner had begun serving his sentence. *Murray* was the result of the consolidation of two appeals by the United States of grants of probation. In each of the cases, a district court had granted probation to a defendant after the defendant had been delivered into the custody of the executive branch to serve a sentence of imprisonment.

The Supreme Court, interpreting basically the same statutory language applicable here, observed that to read the probation statute as allowing a district court to grant probation at any time during the prisoner's sentence would "make applicable to the same crimes at the same time three different methods of mitigation," *id.* at 356, 48 S.Ct. at 149,—executive clemency, parole, and probation. The court found it "unlikely" that the Congress intended such a result, and cited *Ex parte Lange*, 18 Wall. 163, 21 L.Ed. 872 (1874), for the principle that the beginning of the service of the sentence in a criminal case ends the power of the court to change it. Based on this view, the Supreme Court concluded that "[a] more reasonable construction [of the probation statute] is to reconcile the provisions for probation, parole, and executive clemency, making them as little of a repetition as we can." *Id.*, 275 U.S. at 357, 48 S.Ct. at 149.

*Affronti v. United States*, 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62 (1955), further delineated the temporal limits of a district court's probationary authority. The prisoner in *Affronti*, while serving the first of a series of consecutive sentences, sought by motion to suspend his remaining sentences. He argued that a district court has

New Jersey for events which occurred during the period between January 1985 and October 1985. Camarata resumed his incarceration in federal prison effective June 1985.

probationary power over unexecuted sentences. The Supreme Court rejected that argument, stating that the *"Murray* opinion points out that it is unlikely that Congress would have found it wise to make probation apply in such a way as to unnecessarily overlap the parole and executive-clemency provisions of the law." *Id.* at 83, 76 S.Ct. at 173. In light of its decision in *Murray,* the Supreme Court again interpreted the statute in such a manner as to avoid interference with the parole and clemency powers of the executive branch, and held that "the probationary power ceases with respect to all of the sentences composing a single cumulative sentence immediately upon imprisonment for any part of the cumulative sentence." *Id.*

Thirty years later, in *United States v. Veatch,* 792 F.2d 48 (3d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986), this court was faced with a new variation on the old question of the limit of a district court's probationary authority. The facts of *Veatch* were simple. Veatch had been sentenced to a six-month term of imprisonment to be followed by a five-year probationary term. While free on bond pending appeal, Veatch committed a felony. The district court revoked its previously imposed probationary sentence, on the grounds of Veatch's state felony conviction, and sentenced Veatch to a longer custodial sentence.

This court, while it briefly discussed *Affronti* and *Murray,* spent much of its effort in *Veatch* examining the analyses of other Courts of Appeals in similar cases. In *Veatch,* we cited with favor the approach of *United States v. Ross,* 503 F.2d 940 (5th Cir.1974), which held that a district court can revoke probation where the defendant committed an unrelated later offense before his sentence began. We rejected the reasoning of *United States v. Dick,* 773 F.2d 937 (7th Cir.1985), which

hewed to a stricter interpretation of the probation statute.[2]

Reading the statute broadly, we then held that "a district court may revoke probation if a defendant violates the conditions of probation in the period between the date of sentencing and date of incarceration." *Veatch,* 792 F.2d at 52. It is obvious from examining the opinion in *Veatch* that we intended only to address the narrow issue of the authority to revoke probation on the basis of acts committed pending appeal. We did not propose that our action trench upon or cause tension with the executive branch. We said:

> To read the statute as narrowly as did *Dick* would frustrate the intent of the Act and would deprive the courts of the authority to revoke probation when an offender has committed another criminal act while the original conviction is on appeal. The need for the power to revoke is perhaps more acute when the additional offense occurs so soon after imposition of a sentence than it would be when the infraction occurs years later. *In addition, during the period when the defendant is at liberty pending appeal, the concerns that influenced Affronti do not exist. In that interval, there is no conflict between the court's authority and the executive's responsibility for confinement or clemency.*

*Id.* (emphasis added).

*Veatch* unequivocally concluded that the district court's probationary power exists in the period *after sentencing* and *before appeal and incarceration.* Equally clear to my eyes is that *Veatch* did not intend to include in its holding those situations giving rise to potential conflicts between the judiciary and the executive regarding the punishment of prisoners. The case before us today involves precisely that situation. It involves a period of time during which

---

**2.** In *United States v. Dick,* 773 F.2d 937 (7th Cir.1985), the Seventh Circuit faced the exact issue that this court considered in *Veatch:* the defendant in *Dick* had committed a felony while on bail pending appeal. The Seventh Circuit chose to interpret strictly the language of the probation statute and held that "a district court cannot revoke the probation of a defendant for

an event that occurred before the beginning of the probationary term," and that "[t]he power to revoke probation is available only for probation violations occurring during the probationary term." *Id.* at 944. As discussed *infra, Veatch* rejected this approach with regard to crimes committed while the defendant was on bail pending appeal.

Camarata was in the custody of the executive branch, rather than under the authority of the sentencing court, because Camarata had already begun, and was still subject to, a term of incarceration.[3]

In the Fifth Circuit's decision in *United States v. Wright*, 744 F.2d 1127 (5th Cir. 1984), a distinction is drawn between the period of time *preceding* incarceration and the period of time *following* incarceration but *preceding* the commencement of the probationary period. In *Wright*, the Fifth Circuit addressed the specific question of whether "the district court was authorized to revoke the [defendant's] probation for a violation of a probation condition that had occurred before the probationary period had commenced." *Id.* at 1128. *Wright* involved a federal defendant who had been sentenced on two count Wright was sentenced on the first count to a term of incarceration, and his sentence on the second count was one of probation. While on parole from prison on the first count, Wright committed a state crime. The district court found that Wright had violated one of the conditions of his probation and revoked his probation on the second count.

On review, the Fifth Circuit held that the district court had no authority to revoke Wright's sentence of probation on the second count for a violation that occurred before his prison term had ended and his probationary sentence had begun. To the contrary, the court stated, while a violation of a parole condition may be grounds for revoking a defendant's parole, it is not grounds for revoking his probation on the second sentence, which has yet to commence.

*Wright* was decided ten years after the same circuit decided *United States v. Ross*, 503 F.2d 940 (5th Cir.1974). In *Ross*, the Fifth Circuit had held that a district court did not abuse its discretion when it revoked a defendant's probation for a crime committed before the beginning of his sen-

tence. In *Wright*, however, the Fifth Circuit noted that *Ross* created only a limited exception to the wording of the probation statute, an exception which encompassed only those events occurring prior to the commencement of the incarceration sentence. In reaching its holding, the court said:

> [u]nder the rationale of *Affronti*, therefore, the district court was without power, once the defendant commenced service of the first of cumulative sentences, *to grant or to revoke probation* as to a consecutive sentence, even though it had not yet commenced.... Save for the power under Fed.R.Crim.P. 35 of a district court to modify a sentence within 120 days after it is imposed or affirmed on appeal, the sentencing judge's power to modify the sentence ends after it is imposed and the prisoner commences service under it. *United States v. Addonizio*, 442 U.S. 178, 189 & n. 16 [99 S.Ct. 2235, 2242 & n. 16]....

*Wright*, 744 F.2d at 1131 (emphasis added). Thus *Wright* clarified the scope of *Ross*, explaining that *Ross* represented a limited exception to the wording of the probation statute and that the district court's authority to modify a sentence by revoking probation *ceased* when the defendant began serving a sentence in prison and was within the custody of the executive branch.

I am persuaded by the reasoning of the Fifth Circuit in *Wright*, which logically and sensibly recognized that *Ross's* deviation from established jurisprudence is at most a limited one. In light of the fact that *Veatch* followed *Ross*, and I am bound by *Veatch*, I too would hold that *Veatch* is only a limited and narrow exception to the terms of the probation statute. It is an exception which, because of *Affronti* and *Murray*, cannot be extended to the situation where a defendant has been incarcerated—a situation different from that confronted in *Veatch*—and has not yet begun

---

**3.** I agree with Judge Sloviter that the district court's authority to order bail pending resolution of a Federal Rule of Civil Procedure 35(b) motion was not challenged on appeal, and therefore is not before us as an issue. Nevertheless, Camarata was still subject to the authority

of the executive branch because his prison term had not been concluded. Camarata's situation differed from Veatch's because Veatch had not been incarcerated subject to the authority of the executive branch at any time before his probation was revoked.

his probationary term. In my opinion, *Veatch's* reasoning permits no other result, as it contemplates no more than its particular facts allow. Moreover, the *Veatch* court was obviously reluctant to even create the *Veatch* exception to the probation statute, as it feared that even that exception might lead to conflict between the judicial and executive branches.

### B.

Because I believe that *Veatch* was not intended to be read more broadly than its explicit holding, it is evident that our decision in this case is not controlled by *Veatch.* To the contrary, I think that Camarata's case is a prime example of a situation where the judiciary and executive branches' power to punish may come into conflict, and indeed have come into conflict if the decision announced by Judge Sloviter's opinion here is sustained. Consequently, I think that *Affronti,* rather than *Veatch,* must dictate our decision.

Camarata's case involved a revocation of probation based upon state crimes which Camarata committed after he had commenced serving his federal prison sentence. As Judge Sloviter's opinion recites, Camarata had been sentenced to forty-eight months of federal custody followed by five years probation. After this court had affirmed his conviction, Camarata sought a reduction of sentence to time served. The district court released Camarata on bail on October 30, 1984 and thereafter, on January 27, 1985, reduced Camarata's sentence to two years to be followed by three years probation. Camarata was ordered to serve the balance of his federal sentence (fourteen months) at the federal correctional institution at Allenwood, Pennsylvania, commencing June 1, 1985. In October 1985, while Camarata was incarcerated at Allenwood, he was indicted by the State of New Jersey for acts committed between January 1, 1985 and October 8, 1985. Camarata pled guilty to the New Jersey charges in July 1986 and received a probationary sentence. It was after his release from federal custody in mid–1986 that the probation authorities filed a petition to revoke his federal probation, using Camarata's New Jersey conviction as the basis for the petition.[4]

Thus, the district court properly acknowledged that Camarata committed his crime before his term of probation had begun, but after his term of incarceration had commenced. However, the district court held that *Veatch's* "broad" language would allow the revocation of the defendant's probation at *any time* after sentencing before the probationary term commenced. To support this conclusion, the district court distinguished the situation in *Affronti* as one involving "conflicting" authority, while *Camarata* merely involved "overlapping" authority, a presumably more innocuous state of affairs.

Judge Sloviter has, in her opinion, adopted the same characterization of Camarata's plight. She dismisses *Affronti's* relevance to our case, because *Affronti* involved the *granting* of probation, as opposed to the *revocation* of probation. I cannot agree that the principles announced in *Affronti* distinguish between the power to *increase* punishment and the power to *decrease* punishment. Rather, as I read *Affronti,* its instruction controls every modification of a probationary term. Indeed, as I would hold here, the Fifth Circuit in *Wright* held that *Affronti* was a limitation on a sentencing court's power to *revoke* probation. Moreover, in *Veatch,* this court read *Affronti* as a restraint on a district court's power to revoke probation: "*Affronti* restricted the trial judge's discretion to *revoke* probation when it might conflict with the executive prerogatives."

4. It should be noted that Camarata's release from federal custody in January of 1985 was secured by the posting of bail pending his recommitment to Allenwood in June of 1985, where he completed his term of imprisonment. Thus, from January to June of 1985—a portion of the period encompassed within the New Jersey indictment—Camarata technically remained in the custody of the executive branch and was simply enjoying an interlude prior to returning to Allenwood to serve the fourteen month balance of his federal prison sentence. Accordingly, when the crimes charged in the New Jersey indictment took place. Camarata had yet to complete his term of federal imprisonment and was therefore under executive control.

*Veatch,* 792 F.2d at 50 (emphasis added). Accordingly, even *Veatch* interpreted *Affronti* as having a broader reach than Judge Sloviter acknowledges.

As I have observed above, Camarata's case is the perfect example of such a conflict of authority. In this case, not only did the district court revoke Camarata's probation, but the Bureau of Prisons transferred Camarata to another facility as a result of his second crime. The transfer resulted in Camarata's loss of good time, and therefore increased the amount of time he will spend confined in prison. As a consequence of being subjected to the authority of both branches, even though Camarata's offense was committed during the term of his prison sentence when only the executive branch should have had charge of his discipline, Camarata has suffered multiple punishments inflicted by two discrete and separate branches of the government.[5]

### C.

The logical result of the decision reached by Judges Sloviter and Becker—and the government's position—is that a sentencing court may revoke a yet-to-be-commenced probationary term for an event that occurs during the prison term that is being served. In the normal course of events, if a serious crime is committed by a prisoner, the prisoner is faced with separate criminal charges for that crime. If the crime is less serious or amounts only to an infraction of the prison's rules, the prisoner would be subject to disciplinary proceedings within the prison system. There is no danger that a prisoner will not be punished for wrongdoing, if punishment is merited.

Under the statutory interpretation advanced in Judge Sloviter's opinion, however, if, for example, a sentencing court learns of a minor infraction committed while the prisoner was incarcerated, the sentencing court can revoke probation, *even if the prison authorities have determined that the incident is too minor for punishment.* The exercise of such a power raises again the concerns that *Affronti* expressed about a sentencing court's familiarity with a prisoner, a concern that the Supreme Court addressed in terms of the "practicalities of sentencing":

> At the time of entering a judgment of conviction, the district judge is in the best position to fix the terms of a convict's sentence. Thereafter, however, the judge becomes progressively less familiar with the considerations material to the adjustment of the punishment to fit the criminal. At the same time, the officials of the Executive Branch responsible for these matters become progressively better qualified to make the proper adjustments. ... These considerations apply as much to a series of consecutive sentences as to a simple general sentence.

*Affronti,* 350 U.S. at 83–84 n. 13, 76 S.Ct. at 173–174 n. 13.

Thus, the sentencing court, depending upon the passage of time and the events that take place, may no longer be familiar with a prisoner's situation when he is in the custody of the executive branch. It is therefore not in the same position to take appropriate action as it was at the time of sentencing. It is in this area that the prerogatives of the judicial and the executive branches come into serious conflict.

As I have indicated above, I am uncomfortable with the *Camarata* result reached by my colleagues because of the absence of clear statutory authority and because of the reasoning and unequivocal warnings of *Affronti.* I think that to expand a district court's authority, so as to permit a district court to retain sentencing jurisdiction over a prisoner during the entire period of the prisoner's pre-probation sentence, not only offends the statute but also disrupts the respective functions of the executive and judicial branches. Moreover, such authority would appear to run counter to the prescription of Federal Rule of Civil Procedure 35(b),[6] which proscribes sentencing action

---

5. Camarata also suffered an additional punishment, as he was punished by the state court for the crime which provoked the district court's revocation of probation.

6. Federal Rule of Criminal Procedure 35(b) provides:

> A motion to reduce a sentence may be made, or the court may reduce a sentence without

by a district court after 120 days. *See United States v. Addonizio*, 442 U.S. 178, 189 n. 16, 99 S.Ct. 2235, 2242 n. 16, 60 L.Ed.2d 805 (1979) (prior to the adoption of Rule 35, the trial courts had no authority to change a criminal sentence after the defendant began to serve the sentence). It is obvious to me that the concerns leading to the 120–day limit under Rule 35(b) are similar to the concerns operative in the present case. In addition, the prospect of a district court increasing a defendant's sentence years after it has been imposed implicates, in my judgment, the concerns which gave rise to *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (defendants should be protected from being subjected to more than one possible conviction for an alleged offense), and *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (a defendant should be protected from imposition of multiple punishments for the same offense). *But see United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (under special offender statute sentences may be increased after criminal sentence imposed).

The exception which led to *Veatch* was developed to deal with situations in which the defendant's wrongdoing occurred soon after the defendant was sentenced, before the executive branch assumed responsibility for him. When a district court is misled by a defendant's misrepresentations at sentencing, a later revocation of probation seems fair.

On the other hand, and as exemplified in the case before us, Camarata committed an offense long after he was sentenced and had commenced serving his term in prison. In Camarata's case, the district court was not misled at his sentencing, but rather imposed a sentence deemed appropriate under all the circumstances at that time. It was only *after* the sentencing, that the offense giving rise to the district court's revocation of Camarata's probation occurred. Camarata was not on probation at the time of the offense. He therefore could not have violated a condition of probation.[7] Yet, the district court has now exercised a purported authority to resentence Camarata in an attempt to correct what it now perceives as mistaken leniency. While I can empathize with the district judge's motivation, I cannot agree that the district court judge had the power to act as he did.

Moreover, I think that my colleagues, in recognizing the validity of the district court's revocation, have extended the court's *de facto* probationary authority far beyond the five years clearly prescribed in the probation statute.[8] If the defendant can have his probation revoked before it has even begun, then his probationary sentence would be in effect during, and run concurrently with, his prison term. Therefore, if the defendant were sentenced to twenty years in prison and a five year term of probation, his probationary term would be twenty-five years. This result is obviously not one contemplated by the current probation statute.[9] *Cf. United States v.*

motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon an affirmance of the judgment or dismissal of the appeal, or within 120 days after the entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

7. I question whether a defendant can violate a condition of probation while he is still in prison. My answer, for all of the reasons stated in this dissent, is obvious: he cannot.

8. In relevant part, the probation statute provides: "The period of probation, together with any extension thereof, shall not exceed five years." 18 U.S.C. § 3651.

9. I note that, as mentioned in Judge Sloviter's opinion, an amendment of the probation statute, enacted in the Comprehensive Crime Control Act of 1984, will go into effect on November 1, 1987. I do not find the language of the new statute as persuasive as Judge Sloviter apparently does. To the contrary, the statute has not yet been interpreted and any discussion in *Veatch*

*Dick,* 773 F.2d 937, 943 (7th Cir.1985) ("Were we to permit probation to be revoked for violations of probation that occurred after sentencing but before probation formally began, in effect we would be extending the probationary period past the maximum allowed by statute.").

## II.

For the foregoing reasons, I disagree with Judge Sloviter's opinion announcing the judgment of the court. I would hold that the district court erred when it revoked Camarata's probation for an event occurring after Camarata had begun his term of incarceration.

I therefore respectfully dissent.

Before GIBBONS, Chief Judge, and SEITZ, WEIS, HIGGINBOTHAM, SLOVITER, BECKER, STAPLETON, MANSMANN, GREENBERG, SCIRICA, and GARTH, Circuit Judges.

## SUR PETITION FOR REHEARING

The petition for rehearing filed by *Appellant,* James Camarata in the above-entitled case having been submitted to the judges who participated in the decision of this court and to all other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied. Judge Mansmann would have granted rehearing. Judge Garth as a Senior Circuit Judge is remitted to voting only for panel rehearing. *See* 28 U.S.C. § 46; Internal Operating Procedures, Third Circuit, Chapter 9B.3. Accordingly, Judge Garth would grant the petition for panel rehearing for the reasons set forth in his panel dissents in *United States v. Davis,* 828 F.2d 968 (3d Cir.1987) and *United States v. Camarata,* 828 F.2d 974 (3d Cir.1987).

concerning the meaning of the amended statutory language constitutes nothing more than dictum.

Moreover, Judge Sloviter encounters the same problems of interpretation with the new statute as she does with the current statute. Indeed, her position would allow a *de facto* probationary period longer than the five-year period allowed under either the new statute or the current statute. *See* 18 U.S.C. § 3651 ("The period of probation ... shall not exceed five years");

*see also* 18 U.S.C. § 3561 (new statute provides for a maximum sentence of probation of not more than five years for a felony or misdemeanor). In any event, nothing can be found in the new statute which would appear to authorize a revocation of probation during the service of the defendant's prior prison term—or indeed the revocation of probation for violation for a probationary condition before the probationary term had even started.